UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO<br>　　1300 L Street, NW<br>　　Washington, DC 20005 | ) ) ) ) ) ) | |
| CONSUMER ALLIANCE FOR POSTAL SERVICES (CAPS)<br>　　1801 K Street, NW<br>　　suite 500<br>　　Washington, DC 20006<br>　　Plaintiffs, | ) ) ) ) ) ) ) | |
| 　　　　　v. | ) ) | Civil Action No. |
| UNITED STATES POSTAL SERVICE,<br>　　475 L'Enfant Plaza, SW<br>　　Washington, DC  20260,<br><br>　　and | ) ) ) ) ) ) | |
| MAILERS TECHNICAL ADVISORY COMMITTEE<br>　　475 L'Enfant Plaza, SW<br>　　Room 2P736<br>　　Washington, DC  20260-0736,<br><br>　　Defendants. | ) ) ) ) ) ) ) | |

# COMPLAINT

## INTRODUCTION

This complaint is filed by the American Postal Workers Union, AFL-CIO  ("APWU" or

"Union") and Consumer Alliance for Postal Services ("CAPS")  for enforcement of the Federal

Advisory Committee Act, 5 U.S.C. App. 2 §§1-15. APWU and CAPS seek declaratory judgment

that the United States Postal Service ("USPS") and its advisory committee, the Mailer's Technical

Advisory Committee ("MTAC"), have violated the Act by by failing and refusing to allow

APWU and CAPS access to MTAC General Session and work group meetings; and by failing and

refusing to give APWU full access to complete MTAC and MTAC work group records, reports,

transcripts minutes, appendixes, working papers, drafts, and studies, as well as access to the

MTAC computer-based records system; and by refusing to admit CAPS to membership.  APWU

and CAPS also seek injunctive relief to prevent future such violations of the Act.

## PARTIES

1.  Plaintiff American Postal Workers Union, AFL-CIO, is an unincorporated labor

organization with its offices at 1300 L Street, N.W., Washington, D.C. 20005.  APWU is a party

to three collective bargaining agreements with the United States Postal Service, and represents

approximately 300,000 employees of the Postal Service.  The APWU sponsors a health plan that,

under contract with the U.S. Office of Personnel Management, provides health insurance services

to federal and postal employees through the Federal Employees Health Benefits Program.  The

APWU, its locals and the APWU Health Plan collectively mail more than five million pieces of

mail each year. APWU maintains offices and conducts business throughout the United States and

has Local affiliates in every state and territory of the United States; APWU sends mail in, and

receives mail from, every U.S. State and territory.

2. Plaintiff  Consumer Alliance for Postal Services was founded in 2003 to protect

affordable and dependable mail service for all Americans through participation in the legislative

and regulatory process as it affects postal services.  CAPS members are nonprofit organizations

that regularly communicate with their members by using postal services. CAPS members and the constituents of CAPS members have a direct interest in access to affordable and efficient postal services.

3. Defendant United States Postal Service is, pursuant to 39 U.S.C. §201, "an independent establishment of the executive branch of the Government of the United States... ." The headquarters of the Postal Service is at 475 L'Enfant Plaza, SW, Washington, DC 20260.

4. Defendant Mailer's Technical Advisory Committee is an advisory committee to the USPS. MTAC's Charter and Bylaws describe MTAC as "a joint effort between mailers and the US Postal Service to share technical information, advice and recommendations on matters concerning mail-related products and services in order to enhance customer value and expand the use of these products and services for mutual benefit". MTAC meets at least quarterly at the USPS headquarters and has its mailing address at the USPS headquarters at 475 L'Enfant Plaza, SW, Washington, DC 20260.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this complaint because it arises under the Federal Advisory Committee Act so it raises a federal question under 28 U.S.C. § 1331. The Court has jurisdiction to provide the relief sought in this complaint under the Declaratory Judgment Act 28 U.S.C. §2201.

6. Venue is proper in this District pursuant to 39 U.S.C. §§409 and 1208, and 28 U.S.C. §1391(b) and (e), because the USPS is headquartered in this District. MTAC holds its meetings in this District. APWU represents and acts for its members in dealings with the USPS in this District. CAPS is also headquartered in this District.

3

STATEMENT OF FACTS

7. APWU is the collective bargaining representative of USPS employees in several bargaining units: Clerks, Mail Equipment Shop Employees, Maintenance Employees, Material Distribution Centers Employees, Motor Vehicle Service Employees, Operating Services Employees, and Information Technology/Administrative Assistance Center Employees. USPS employees in each of those bargaining units are members of APWU; and APWU and USPS are parties to collective bargaining agreements covering employees in those bargaining units.

8. APWU has been an active participant in proceedings before the Postal Rate Commission and now the Postal Regulatory Commission (both referred to herein as "PRC"). APWU has appeared before the PRC to advocate on behalf of itself, its members, individual mailers and small mailers; and to oppose efforts by certain large mailers to alter Postal processes and operations in ways that would increase costs and decrease services for individual mailers and small businesses , and decrease revenue for the USPS.

9. CAPS members and the constituents of CAPS members have a direct interest in access to affordable and efficient postal services.  CAPS engages in various advocacy activities to support postal services for individuals and small businesses

10. The USPS is an independent establishment of the executive branch of the Government of the United States and a government agency.

11. MTAC was established by the USPS as an advisory committee to provide advice and recommendations to the USPS.

12. MTAC is composed of USPS officials, mailers and mailer associations and other associations and organizations related to the mail industry. MTAC may not meet without a

4

representative of the USPS and approval of the USPS, and the USPS provides administrative support for MTAC. MTAC generally functions through "work groups" formed by the MTAC Steering Committee; the work groups study mail industry problems and issues, and propose actions and solutions to MTAC. MTAC in turn gives advice and makes recommendations to the USPS based on MTAC or MTAC work group proposals and recommendations. The USPS receives and may act on MTAC recommendations; and has in the past acted pursuant to MTAC advice and recommendations.

13. The MTAC Charter and Bylaws provides in part:

The Mailers Technical Advisory Committee (MTAC) is a joint effort between mailers and the US Postal Service to share technical information, advice and recommendations on matters concerning mail-related products and services in order to enhance customer value and expand the use of these products and services for mutual benefit.

\*    \*    \*    \*

Meetings of the full committee are generally held on a quarterly basis each calendar year or at the call of the Postal Service Co-Chair.... Meetings of the membership without a representative of the Postal Service or the approval of the Postal Service Co-Chair may not be construed as official meetings of MTAC.

\*    \*    \*    \*

Minutes will be kept of all proceedings. Minutes will, at a minium, contain a description of the matters discussed, any conclusions reached, presentation materials, and copies of all reports received, issued, or approved by the Committee. The accuracy of the record must be certified by the Postal Service Co-Chair, Vice-Chair, or the other USPS representative present at the meeting....

\*    \*    \*    \*

The Vice President, Service & Market Development is the MTAC Co-Chair for the Postal Service. S/he appoints two Vice-Chairs from the Postal Service for support.

\*    \*    \*    \*

The industry Co-Chair and Vice-Chair are elected from the MTAC industry representatives.

5

\*     \*     \*     \*

The postal Co-Chair appoints a MTAC Program Manager who provides administrative support for meetings and functions and serves as secretary to the MTAC Executive Committee.

\*     \*     \*     \*

The Executive Committee consists of:
- the Postal Service Co-Chair and Vice-Chairs,
- the industry Co-Chair and Vice-Chair,
- the immediate past industry Co-Chair (ex officio), and
- the MTAC Postal Service Program Manager (non-voting member)

\*     \*     \*     \*

MTAC functions primarily through issue-focused work groups that are chartered, established and monitored by the MTAC Steering Committee. The Steering Committee is composed of both industry and postal representatives and is chaired jointly by the industry and postal Co-Chairs.

\*     \*     \*     \*

MTAC representatives must communicate the major topics discussed in MTAC meetings to their member associations/organizations for general information dissemination and appropriate action....

\*     \*     \*     \*

Participation of non-members in workgroups will be governed by the workgroup guidelines issued by the Steering Committee. Non-members may attended general session meetings only at the specific invitation of a member representative and must receive clearance ahead of time from the Treasurer.

14. MTAC has work group guidelines which provide in part:

Any MTAC representative or USPS executive can propose an issue that would require the formation of a new work group.

\*     \*     \*     \*

The purpose of any work group must support the stated purpose of MTAC:

\*     \*     \*     \*

The Steering Committee sponsor will appoint one (1) industry and one (1) USPS work group leader.

\*     \*     \*     \*

The Steering Committee sponsor and the work group leaders will extend an invitation to key stakeholders and mailing industry representatives to participate in the work group.

\*     \*     \*     \*

Accurate and unbiased meeting notes must be recorded. Meeting notes and a list of meeting attendees must be distributed to work group participants and the MTAC Steering Committee Sponsor. Minutes should be posted to MITS within ten (10) days after the meeting.

15. MTAC generally meets quarterly at the USPS headquarters in Washington, D.C.

16. MTAC quarterly meetings are typically attended by MTAC members and their invitees, MTAC work group members, Postal Service officials and persons invited by the USPS.

17. MTAC keeps minutes of its quarterly meetings and such minutes are verified by the MTAC USPS representatives. MTAC also receives work group reports and recommendations.

18. MTAC work groups generally meet at least quarterly and often in conjunction with MTAC meetings.

19. MTAC work groups keep notes of their meetings and make reports and recommendations to MTAC.

20. MTAC minutes, MTAC recommendations and reports, MTAC work group notes, and MTAC work group reports are posted on the MTAC Issue Tracking System ("MITS"). Access to MITS is restricted to MTAC members with MITS usernames and log-in codes.

21. MTAC and MTAC work groups have investigated, studied, reported-on, offered opinions on, and provided advice and recommendations to, the USPS on various subjects involving Postal operations, and they are currently investigating and studying various subjects involving Postal operations. Among other things, MTAC work groups have investigated and

studied, or are investigating and studying: changes in design for flat mail, proposals for productivity improvements generally, drop shipments and "mail induction", flat sequencing system, changes in locations for regional distribution centers, optimization of mailer discounts, co-palletization of trays, adoption of vote-by-mail systems, changes in bar codes, alternative packaging, workshare discounts, Destinating Delivery Unit (DDU)) induction, pricing changes, new labeling standards, seamless acceptance programs, distribution center relocation, and service standards.

22. The Postal Service has acted upon recommendations, advice, reports and opinions of MTAC and MTAC work groups. In some instances, where necessary, the Postal Service has proposed and/or issued regulations in response to MTAC and MTAC work group recommendations, advice, reports and opinions. In other instances, the Postal Service has acted on MTAC and MTAC work group recommendations, advice, reports and opinions by adopting and/or promulgating new rules, procedures, work practices and/or processes; altering existing procedures, rules, work practices and/or processes; purchasing or modifying equipment; and/or altering prices and/or charges.

23. APWU members have been and/or will be affected by USPS actions adopting and/or promulgating new rules, procedures, work practices and/or processes; altering existing procedures, rules, work practices and/or processes; purchasing or modifying equipment; and/or altering prices and/or charges pursuant to MTAC and MTAC work group recommendations, advice, reports and opinions. In some instances APWU members have been or will be adversely affected by such actions; in other instances APWU members have been or will be positively affected by such actions.

8

24. Although APWU, its locals and its Health Plan are collectively a large mailer, and although they have been, and will be, affected by any USPS actions adopting and/or promulgating new rules, procedures, and/or processes based on the advice, recommendations or opinions of MTAC, APWU has been denied opportunity to attend MTAC meetings, review MTAC documents and recommendations, and comment on issues and concerns being considered by MTAC.

25. The USPS has presented issues to the PRC where the USPS position adopted MTAC recommendations or was influenced by MTAC recommendations. The PRC has held proceedings concerning matters on which MTAC has made recommendations to the USPS, and on USPS policies, proposals and positions recommended by, or influenced by MTAC.

26. By excluding APWU from MTAC General Session and work group meetings, by refusing to allow APWU the opportunity to comment on issues being considered by MTAC and by barring APWU from access to MTAC documents and the MITS, the USPS and MTAC have prevented APWU from knowing about, commenting-on and attempting to influence MTAC recommendations on matters that have been and will be presented to the PRC.

27. By excluding APWU from MTAC General Session and work group meetings, by refusing to allow APWU the opportunity to comment on issues being considered by MTAC, by barring APWU from access to MTAC documents and the MITS, and by refusing to admit CAPS to membership, the USPS and MTAC have concealed from APWU and CAPS information pertinent to the development of MTAC and USPS policies, proposals and positions that have been and will be promulgated as postal regulations or policies, or presented to the PRC as postal positions on policy issues, and have thereby placed the APWU and CAPS at a disadvantage

9

relative to MTAC members and others with access to MTAC meetings and materials..

29. On November 16, 2006, APWU President William Burrus wrote to the Postal Service Chair of MTAC requesting information about MTAC members and MTAC work groups; descriptions of the subject areas of each work group; copies of minutes of prior MTAC and workgroup meetings; copies of reports, agendas, updates and recommendations of work groups; and an MITS username and password for access to that system. APWU also sought to make arrangements to attend MTAC and work group meetings.

30. A USPS official responded to APWU's November 16 letter by letter dated December 8, 2006. The USPS sought an explanation of the relevance of the requested information to the collective bargaining agreement.

31. On January 9, 2007, APWU's counsel wrote to MTAC and the USPS official who wrote the USPS December 8, 2006 letter. The January 9 letter of APWU's counsel stated that APWU had assumed that the Postal Service and MTAC would have no hesitation about providing the information and documents the Union had requested because there presumably was no reason to keep that information and documents secret, so APWU further assumed that the information would be provided informally in response to the request. However, the January 9 letter further stated that APWU also sought the information and documents pursuant to the Federal Advisory Committee Act.

32. On January 26, 2007 the Postal Service official who responded to APWU's November 16, 2006 letter sent another letter APWU. The January 26 letter asserted that the Federal Advisory Committee Act is inapplicable to the Postal Service, and that the USPS would provide certain information that "has been available without a MTAC Issue Tracking System (MITS) password".

The January 26 letter provided lists of MTAC members and work groups, the subject areas of the work groups and the dates of future MTAC meetings. The January 26 letter also provided copies of minutes from meetings of the prior year and copies of certain reports to the extent that they were reported in MTAC General Sessions from the prior year. However, the minutes only conveyed summaries of work group reports and referenced other documents and presentations that were not produced by the USPS. The January 26 letter refused to provide APWU with MITS access information, so APWU could not view materials that were available to and used by MTAC members and MTAC work group members. The January 26 letter also stated that "Attendance at MTAC General Session and individual work group meetings is restricted to MTAC members, member-invited and approved MTAC guests". The January 26 USPS letter did not authorize APWU to attend any MTAC meeting.

33. On February 13, 2007, counsel for the APWU again wrote to MTAC and the USPS official who had been writing to APWU stating that the documents provided were "of only limited utility since the most informative items are merely descriptions of the subjects discussed, which in turn refer to more detailed presentations and reports that have not been produced". The February 13 letter renewed APWU's requests for the reports, agendas, updates and recommendations of MTAC work groups, the full materials made available to MTAC members and others who attend MTAC meetings, and MITS access authority. The February 13 letter also requested that APWU Executive Vice President Cliff Guffey or his designee be authorized to attend the MTAC General Session meeting and certain work group meetings that were scheduled for February 21 and 22, 2007.

34. Sometime during the last months of 2006, the MTAC website and MITS were changed

so that no MTAC or MTAC work group materials or information are available without an MITS password.

35.In February of 2007, Phillip Tabbita , APWU Manager Negotiation Support made e-mail requests to the MTAC Postal Chair and stating that he was no longer able to access certain MTAC information that had been publicly available in the past and requested access to such information. An MTAC official responded to Mr. Tabitta by referring him to the USPS letter of January 26, 2007, and by advising him that access to any MTAC website materials now requires a password.

36. MTAC and MTAC work groups held meetings on or about February 21 and 22, 2007. The USPS and MTAC did not authorize an APWU representative to attend any of those meetings.

37. On April 2, 2007, the USPS co-chairperson of MTAC responded to the February 13, 2007 letter of APWU's counsel and stated that "[w]e are treating your letter as an informal Freedom of Information Act (FOIA) request. She then refused to produce the information sought, beyond what had already been provided, asserting that it was exempt from disclosure under certain exemptions to the FOIA. Among other things, the April 2 letter asserted that MTAC reports, agendas, updates and recommendations are exempt from disclosure under FOIA exemption 5 covering pre-decisional and deliberative process materials. The April 2 letter also asserted that the requested materials were exempt from disclosure pursuant to FOIA exemption 5, which exempts materials exempted by other statutes, 39 U.S.C. §410(c)(5) which in turn, the letter said, allows the USPS to withhold consultant reports from disclosure under the FOIA. Finally, the April 2 letter denied APWU an MITS password and ability to attend MTAC meetings on the basis that these requests were outside the scope of the FOIA.

38. As of the date of this complaint, the USPS and MTAC have not authorized an APWU or CAPS representative to attend MTAC and/or MTAC work group meetings.

39. As of the date of this complaint, the USPS and MTAC have not provided APWU with information and materials beyond those provided with the USPS letter of January 26, 2007. In particular the USPS and MTAC have not provided APWU with the reports, agendas, updates and recommendations of MTAC work groups, the full materials made available to MTAC members and others who attend MTAC meetings, or MITS access authority. The April 2, 2007 letter of the USPS co-chairperson of MTAC which treated the APWU requests for access to materials and meetings as FOIA requests essentially denied APWU's access to the documents and meetings that it had sought..

40. On May 7, 2007, the *Business Mailers Review* reported that MTAC workgroups were studying new possible service standards mandated for the USPS under the new Postal Accountability and Enhancement Act and that several "sub-groups" would make recommendations regarding new service standards to the PRC in September of 2007.

41. APWU and CAPS have been denied the ability to attend MTAC General Session and work group meetings, to receive complete MTAC and MTAC work group documents and access to the MITS because the USPS and MTAC have refused to provide APWU and CAPS with access to such meetings, access to such documents, and access to the MITS.

42. Under the recently enacted Postal Enhancement and Accountability Act, the Postal Service must, by December 2007, "in consultation with the Postal Regulatory Commission, by regulation establish (and may from time to time thereafter by regulation revise) a set of service standards for market-dominant products." MTAC has established one or more work groups to

13

consider service standards and to develop recommendations for service standards.

43. Service standards set by the USPS under the PEAE will determine the value of mail to mailers and the American pubic. The regulations are required to enhance the value of postal services to both senders and recipients; preserve regular and effective access to postal services in all communities, including those in rural communities where post offices are not self sustaining; reasonably assure postal customers delivery reliability, speed and frequency consistent with reasonable rates and best business practices; and provide a system of objective external performance measurements.

44. In the promulgation of service standard regulations, the USPS has discretion it will exercise as to the scope and effect of the standards and the content of regulations to be applied to them. Because the USPS has a significant range of discretion in its actions in promulgating its regulations, the MTAC activities concerning service standards, insofar as they influence or affect the exercise of the Postal Service's discretion, result in changes in the regulations that could not be achieved through any public process of comment or legal challenge.

45. The MTAC work group on service standards and service performance measurement systems for market dominant products has been broken into four sub-groups, by product: First Class Mail, Periodicals, Standard Mail, and Packages.

46. The MTAC work group on service standards has more than 160 members, including a number of observers from the postal regulatory

47. There is a huge interest in the new MTAC work group on setting service standards and measurements. About 25 percent of the persons who attend MTAC want to be part of the work group, which is designed to work with the Postal Service to set up its service standards that

14

must be prepared by December. In the opinion of expert advocates on behalf of large mailers, participation in MTAC provides a golden opportunity to get some input on service standards and how they should be measured, for the purpose of advancing the business interests of the mailers.

48. Because APWU has not been permitted access to MTAC work groups or meetings, and because CAPS has been denied admission to MTAC, neither APWU nor CAPS will be permitted by MTAC to participate in the development of service standards by USPS and the PRC through MTAC workgroups. No comparable opportunity exists for input or participation in the development of the service standards and measurement standards.

49. As a result of the fact that USPS will develop its service standard regulations through MTAC work group meetings, APWU, CAPS, and the public will not be permitted to participate in the development of those service standards, although large mailers and their representatives, through MTAC, will be permitted to provide advice on and to participate in the development of those regulations.

50. As a result of the activities of MTAC, USPS and PRC representatives, the service standard regulations finally issued or proposed by the USPS will bear the imprimatur not only of the USPS, but also of MTAC, large mailer representatives, and PRC officials. That fact will truncate and limit the effectiveness of any public comment or review process and of any legal challenge to those regulations.

51. Insofar as the USPS "consultation" with the PRC on service standards occurs privately, through MTAC work groups or meetings, rather than on the public record, APWU, CAPS, and the American public will be denied the right to have a meaningful opportunity to comment on and to affect the content of the regulations.

52.. As a result of the USPS and MTAC refusal to allow APWU access to MTAC and MTAC work group meetings and documents, and access to the MITS system, APWU and its members have been denied various rights under the Federal Advisory Committee Act. APWU has been deprived of knowledge of MTAC and MTAC work group activities and plans, deprived of access to MTAC documents and papers, and deprived of knowledge of MTAC and MTAC work group recommendations. APWU has been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups on issues of interest to APWU and its members with respect to MTAC and MTAC work group advice and recommendations to the USPS on subjects where APWU, its members, its locals and its Health Plan are, or are likely to be, affected by USPS adoption of MTAC recommendations, or reliance on MTAC advice.

53.  As a result of the USPS and MTAC refusal to allow APWU access to MTAC and MTAC work group meetings and documents, and access to the MITS system in accordance with the Federal Advisory Committee Act,  APWU has been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups, to thereby give input for, and to attempt to influence, the advice and recommendations of MTAC and its work groups on issues of interest to APWU, its members, its locals and its Health Plan when MTAC members and MTAC work group members are giving advice and recommendations on those issues.

54. Consumer Alliance for Postal Services (CAPS), as part of its activities to support postal services for individuals and small businesses, applied for membership in MTAC, using the procedures established by MTAC for that purpose.  MTAC refused to admit CAPS into membership.   55. As a result of the USPS and MTAC refusal to admit CAPS, CAPS and its member organizations have been deprived of knowledge of MTAC and MTAC work group

16

activities and plans, deprived of access to MTAC documents and papers, and deprived of

knowledge of MTAC and MTAC work group recommendations. CAPS and its member

organizations have been denied the ability to attend, appear before, and/or file statements with

MTAC and MTAC work groups on issues of interest to CAPS and its member organizations with

respect to MTAC and MTAC work group advice and recommendations to the USPS on subjects

where CAPS and its member organizations are, or are likely to be, affected by USPS adoption of

MTAC recommendations, or reliance on MTAC advice.

56. As a result of the USPS and MTAC refusal to admit CAP, CAPS has been denied the

ability to attend, appear before, and/or file statements with MTAC and MTAC work groups, to

thereby give input for, and to attempt to influence, the advice and recommendations of MTAC

and its work groups on issues of interest to CAPS and its member organizations, when MTAC

members and MTAC work group members are giving advice and recommendations on those

issues.

<u>CAUSE OF ACTION</u>

57. APWU and CAPS incorporate by reference as if fully set forth herein each and every

allegation of paragraphs 1 through 56.

58. Among other things, the Federal Advisory Committee Act, 5 U.S.C. App. 2 Section

10, provides

    (a)(1) Each advisory committee meeting shall be open to the public
          *     *     *     *
    (a)(3) Interested persons shall be permitted to attend, appear before, or file statements with
          any advisory committee, subject to reasonable rules or regulations as the
          Administrator may prescribe
    (b)    Subject to section 552 of title 5, United States Code, the records, reports, transcripts
          minutes, appendixes, working papers, drafts, studies, agenda, or other documents

which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying....

(c)    Detailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee....

59. By failing and refusing to allow APWU and CAPS access to MTAC General Session meetings, the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act.

60. By failing and refusing to allow APWU and CAPS access to MTAC work group meetings, the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act.

61. By failing and refusing to give APWU and CAPS full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies, the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act.

62. By failing and refusing to give APWU and CAPS access to the MITS system which contains complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies, the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, APWU and CAPS respectfully ask this Court to:

A.    DECLARE that the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act by failing and refusing to allow APWU and CAPS access to MTAC General Session meetings;

18

B.    DECLARE that the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act by failing and refusing to allow APWU and CAPS access to MTAC work group meetings;

C.    DECLARE that the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act by failing and refusing to give APWU and CAPS full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies,

D.    DECLARE that the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act by failing and refusing to give APWU and CAPS access to the MITS;

E.    ENJOIN the USPS and MTAC to allow APWU and CAPS access to MTAC General Session and work group meetings;

F.    ENJOIN the USPS and MTAC to allow APWU and CAPS full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies; and to the MITS;

G.    ENJOIN USPS and MTAC from refusing to admit CAPS to membership in MTAC:and

H.    GRANT such other and further relief as the Court  may deem just and proper.

Respectfully submitted,

Richard S. Edelman, D.C. Bar # 416348
O'Donnell, Schwartz & Anderson, P.C.
1900 L Street, N.W., Suite 800
Washington, DC 20036
Telephone: (202) 898-1824
Facsimile: (202) 429-8928
e-mail:REdelman@odsalaw.com

Darryl J. Anderson, D.C. Bar # 154567
Jennifer L. Wood
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, DC 20005
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
e-mail: Danderson@odsalaw.com

Attorneys for Plaintiff American Postal Workers Union
and Consumer Alliance for Postal Services

May 30, 2007

07-990
E JR

## CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

**I (a) PLAINTIFFS**

American Postal Workers Union, AFL-CIO, et al.
1300 L Street, NW, Suite 1200
Washington, DC 20005

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Richard Edelman
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, D.C. 20005
(202) 898-1707

**DEFENDANTS**

United States Postal Service, et al.
475 L'Enfant Plaza, SW
Washington, DC 20260

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

Case: 1:07-cv-00990
Assigned To : Robertson, James
Assign. Date : 5/30/2007
Description: General Civil

---

**II BASIS OF JURISDICTION**
(SELECT ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
( FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A.  Antitrust**

- ☐ 410 Antitrust

**○ B.  Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C.  Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E.  General Civil (Other)    OR    ○ F.  Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G. Habeas Corpus/2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Federal Advisory Committee Act, 5 U.S.C. App. 2 §§1-15.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Select YES only if demanded in complaint    JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE 5/30/07    SIGNATURE OF ATTORNEY OF RECORD    JTC

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.