UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
AMERICAN POSTAL WORKERS                 )
UNION, AFL-CIO                                    )
    1300 L Street, NW                           )
    Washington, DC 20005                     )
                                                      )
                                                      )
CONSUMER ALLIANCE FOR POSTAL       )
SERVICES (CAPS)                               )
    1801 K Street, NW                            )
    suite 500                                          )
    Washington, DC 20006                     )
                                                      )
    Plaintiffs,                                      )
                                                      )
        v.                                            )        Civil Action No. 07-0990 (JR)
                                                      )
UNITED STATES POSTAL SERVICE,        )
    475 L'Enfant Plaza, SW                    )
    Washington, DC  20260,                   )
                                                      )
    and                                              )
                                                      )
MAILERS TECHNICAL ADVISORY           )
COMMITTEE                                        )
    475 L'Enfant Plaza, SW                    )
    Room 2P736                                   )
    Washington, DC  20260-0736,          )
                                                      )
JOHN E. POTTER                                 )
Postmaster General and Chief             )
Executive Officer                               )
United States Postal Service                )
    475 L'Enfant Plaza, SW                    )
    Room 2P736                                   )
    Washington, DC  20260-0736,          )
                                                      )
    Defendants.                                   )
_____)

**AMENDED COMPLAINT**

INTRODUCTION

This complaint is filed by the American Postal Workers Union, AFL-CIO ("APWU" or "Union") and Consumer Alliance for Postal Services ("CAPS") for enforcement of the Federal Advisory Committee Act, 5 U.S.C. App. 2 §§1-15. APWU and CAPS seek declaratory judgment that the United States Postal Service ("USPS") and its advisory committee, the Mailer's Technical Advisory Committee ("MTAC"), have violated the Act by by failing and refusing to allow APWU and CAPS access to MTAC General Session and work group meetings; and by failing and refusing to give APWU full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies, as well as access to the MTAC computer-based records system; and by refusing to admit CAPS or some other representative of individuals or small mailers to membership. APWU and CAPS also seek injunctive relief to prevent future such violations of the Act. Plaintiffs seek relief under the FACA and 39 U.S.C. §409 and 28 U.S.C. §1339 because of the defendant's violation of the commands of the FACA. Plaintiffs also seek an order directed to the Postmaster General in the nature of mandamus order under 28 U.S.C. §1361, requiring the Postmaster General to insure that plaintiffs are afforded the rights that are provided them under the FACA.

PARTIES

1. Plaintiff American Postal Workers Union, AFL-CIO, is an unincorporated labor organization with its offices at 1300 L Street, N.W., Washington, D.C. 20005. APWU is a party to three collective bargaining agreements with the United States Postal Service, and represents approximately 300,000 employees of the Postal Service. The APWU sponsors a health plan that, under contract with the U.S. Office of Personnel Management, provides health insurance services

to federal and postal employees through the Federal Employees Health Benefits Program.  The APWU, its locals and the APWU Health Plan collectively mail more than five million pieces of mail each year. APWU maintains offices and conducts business throughout the United States and has Local affiliates in every state and territory of the United States; APWU sends mail in, and receives mail from, every U.S. State and territory.

2.  Plaintiff  Consumer Alliance for Postal Services was founded in 2003 to protect affordable and dependable mail service for all Americans through participation in the legislative and regulatory process as it affects postal services.  CAPS members are nonprofit organizations that regularly communicate with their members by using postal services.  CAPS members and the constituents of CAPS members have a direct interest in access to affordable and efficient postal services.

3.  Defendant United States Postal Service is, pursuant to 39 U.S.C. §201, "an independent establishment of the executive branch of the Government of the United States... ."  The headquarters of the Postal Service is at 475 L'Enfant Plaza, SW, Washington, DC  20260.

4.  Defendant Mailer's Technical Advisory Committee is an advisory committee to the USPS. MTAC's Charter and Bylaws describe MTAC as "a joint effort between mailers and the US Postal Service to share technical information, advice and recommendations on matters concerning mail-related products and services in order to enhance customer value and expand the use of these products and services for mutual benefit". MTAC meets at least quarterly at the USPS headquarters and has its mailing address at the USPS headquarters at 475 L'Enfant Plaza, SW, Washington, DC  20260.

5.  Defendant John E. Potter is Postmaster General of the United States Postal Service.  As

3

such, he is the Chief Executive Officer of the United States Postal Service.  39 U.S.C. Section 203.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction to hear this complaint because it arises under the Federal Advisory Committee Act so it raises a federal question under 28 U.S.C. § 1331. The Court has jurisdiction to provide the relief sought in  this complaint under the Declaratory Judgment Act 28 U.S.C. §2201. Furthermore, the Court has jurisdiction to hear plaintiffs claims that defendants have violated the FACA pursuant to 39 U.S.C. §409 and 28 U.S.C. §1339, which vest the federal courts with subject-matter jurisdiction, respectively, "over all actions brought by or against the Postal Service" and over "any civil action arising under any Act of Congress relating to the Postal Service.". The Court has jurisdiction over this complaint under the Federal mandamus statute, 28 U.S.C. §1361 as an action to compel a officer or employee of the Untied States to perform a duty to the plaintiffs that is mandated by the FACA.

7.  Venue is proper in this District pursuant to 39 U.S.C. §§409 and 1208, and 28 U.S.C. §1391(b) and (e), because the USPS is headquartered in this District. MTAC holds its meetings in this District. APWU represents and acts for its members in dealings with the USPS in this District. CAPS is also headquartered in this District.

## STATEMENT OF FACTS

8.  APWU is the collective bargaining representative of USPS employees in several bargaining units: Clerks, Mail Equipment Shop Employees, Maintenance Employees, Material Distribution Centers Employees, Motor Vehicle Service Employees, Operating Services Employees, Information Technology/Administrative Assistance Center Employees, and

Professional Postal Nurses.  USPS employees in each of those bargaining units are members of APWU; and APWU and USPS are parties to collective bargaining agreements covering employees in those bargaining units.

9.  APWU has been an active participant in proceedings before the Postal Rate Commission and now the Postal Regulatory Commission (both referred to herein as "PRC"). APWU has appeared before the PRC to advocate on behalf of itself, its members, individual mailers and small mailers; and to oppose efforts by certain large mailers to alter Postal processes and operations in ways that would increase costs and decrease services for individual mailers and small businesses, and decrease revenue for the USPS.

10.  CAPS members and the constituents of CAPS members have a direct interest in access to affordable and efficient postal services.  CAPS engages in various advocacy activities to support postal services for individuals and small businesses

11. The USPS is an independent establishment of the executive branch of the Government of the United States and a government agency.

12.  MTAC was established by the USPS as an advisory committee to provide advice and recommendations to the USPS.

13.  MTAC is composed of USPS officials, mailers and mailer associations and other associations and organizations related to the mailing industry.  MTAC may not meet without a representative of the USPS and approval of the USPS, and the USPS provides administrative support for MTAC. MTAC generally functions through "workgroups" formed by the MTAC Steering Committee; the workgroups also include representatives of both the USPS and mailers. Workgroups study mail industry problems and issues, and propose actions and solutions to MTAC

and to the USPS.  The USPS receives and may act on MTAC and workgroup recommendations

and advice; and has in the past acted pursuant to MTAC and workgroup advice and

recommendations.  MTAC workgroups serve as points of contact between the USPS and the

public.

14.  The MTAC Charter and Bylaws provides in part:

The Mailers Technical Advisory Committee (MTAC) is a joint effort between
mailers and the US Postal Service to share technical information, advice and
recommendations on matters concerning mail-related products and services in
order to enhance customer value and expand the use of these products and services
for mutual benefit.

\*    \*    \*    \*

Meetings of the full committee are generally held on a quarterly basis each calendar
year or at the call of the Postal Service Co-Chair.... Meetings of the  membership
without a representative of the Postal Service or the approval of the Postal Service Co-
Chair may not be construed as official meetings of MTAC.

\*    \*    \*    \*

Minutes will be kept of all proceedings. Minutes will, at a minium, contain a
description of the matters discussed, any conclusions reached, presentation materials,
and copies of all reports received, issued, or approved by the Committee. The
accuracy of the record must be certified by the Postal Service Co-Chair, Vice-Chair,
or the other USPS representative present at the meeting....

\*    \*    \*    \*

The Vice President, Service & Market Development is the MTAC Co-Chair for the
Postal Service. S/he appoints two Vice-Chairs from the Postal Service for support.

\*    \*    \*    \*

The industry Co-Chair and Vice-Chair are elected from the MTAC industry
representatives.

\*    \*    \*    \*

The postal Co-Chair appoints a MTAC Program Manager who provides
administrative support for meetings and functions and serves as secretary to the
MTAC Executive Committee.

*       *       *       *

The Executive Committee consists of:
- the Postal Service Co-Chair and Vice-Chairs,
- the industry Co-Chair and Vice-Chair,
- the immediate past industry Co-Chair (ex officio), and
- the MTAC Postal Service Program Manager (non-voting member)

*       *       *       *

MTAC functions primarily through issue-focused work groups that are chartered, established and monitored by the MTAC Steering Committee. The Steering Committee is composed of both industry and postal representatives and is chaired jointly by the industry and postal Co-Chairs.

*       *       *       *

MTAC representatives must communicate the major topics discussed in MTAC meetings to their member associations/organizations for general information dissemination and appropriate action....

*       *       *       *

Participation of non-members in workgroups will be governed by the workgroup guidelines issued by the Steering Committee. Non-members may attended general session meetings only at the specific invitation of a member representative and must receive clearance ahead of time from the Treasurer.

15.  MTAC has work group guidelines which provide in part:

Any MTAC representative or USPS executive can propose an issue that would require the formation of a new work group.

*       *       *       *

The purpose of any work group must support the stated purpose of MTAC:

*       *       *       *

The Steering Committee sponsor will appoint one (1) industry and one (1) USPS work group leader.

*       *       *       *

The Steering Committee sponsor and the work group leaders will extend an invitation to key stakeholders and mailing industry representatives to participate in the work group.

*       *       *       *

7

Accurate and unbiased meeting notes must be recorded. Meeting notes and a list of meeting attendees must be distributed to work group participants and the MTAC Steering Committee Sponsor. Minutes should be posted to MITS within ten (10) days after the meeting.

16.  MTAC generally meets quarterly at the USPS headquarters in Washington, D.C.

17.  MTAC quarterly meetings are typically attended by MTAC members and their invitees, MTAC work group members, Postal Service officials and persons invited by the USPS.

18.  MTAC keeps minutes of its quarterly meetings and such minutes are verified by the MTAC USPS representatives. MTAC also receives work group reports and recommendations.

19.  MTAC work groups generally meet at least quarterly and often in conjunction with MTAC meetings.

20.  MTAC work groups keep notes of their meetings and make reports and recommendations to MTAC.

21.  MTAC minutes, MTAC recommendations and reports, MTAC work group notes, and MTAC work group reports are posted on the MTAC Issue Tracking System ("MITS"). Access to MITS is restricted to MTAC members with MITS usernames and log-in codes.

22.  MTAC and MTAC work groups have investigated, studied, reported-on, offered opinions on, and provided advice and recommendations to, the USPS on various subjects involving Postal operations, and they are currently investigating and studying various subjects involving Postal operations. Among other things, MTAC work groups have investigated and studied, or are investigating and studying: changes in design for flat mail, proposals for productivity improvements generally, drop shipments and "mail induction", flat sequencing system, changes in locations for regional distribution centers, optimization of mailer discounts, co-palletization of trays, adoption of vote-by-mail systems, changes in bar codes, alternative

packaging, workshare discounts,  Destinating Delivery Unit (DDU)) induction, pricing changes,

new labeling standards, seamless acceptance programs,  distribution center relocation, and service

standards.

23.   The Postal Service has acted upon recommendations, advice, reports and opinions of

MTAC and MTAC work groups. In some instances, where necessary, the Postal Service has

proposed and/or issued regulations in response to MTAC and MTAC work group

recommendations, advice, reports and opinions. In other instances, the Postal Service has acted on

MTAC and MTAC work group recommendations, advice, reports and opinions by adopting

and/or promulgating new rules, procedures, work practices and/or processes; altering existing

procedures, rules, work practices and/or processes; purchasing or modifying equipment; and/or

altering prices and/or charges.

24.   APWU members have been and/or will be affected by USPS actions adopting and/or

promulgating new rules, procedures, work practices and/or processes; altering existing

procedures, rules, work practices and/or processes; purchasing or modifying equipment; and/or

altering prices and/or charges pursuant to MTAC and MTAC work group recommendations,

advice, reports and opinions. In some instances APWU members have been or will be adversely

affected by such actions; in other instances APWU members have been or will be positively

affected by such actions.

25.   Although APWU, its locals and its Health Plan are collectively a large mailer, and

although they have been, and will be, affected by any USPS actions adopting and/or promulgating

new rules, procedures, and/or processes based on the advice, recommendations or opinions of

MTAC, APWU has been denied opportunity to attend MTAC meetings, review MTAC

documents and recommendations, and comment on issues and concerns being considered by MTAC.

26.  The USPS has presented issues to the PRC where the USPS position adopted MTAC recommendations or was influenced by MTAC recommendations. The PRC has held proceedings concerning matters on which MTAC has made recommendations to the USPS, and on USPS policies, proposals and positions recommended by, or influenced by MTAC.

27.  By excluding APWU from MTAC General Session and work group meetings, by refusing to allow APWU the opportunity to comment on issues being considered by MTAC and by barring APWU from access to MTAC documents and the MITS, the USPS and MTAC have prevented APWU from knowing about, commenting-on and attempting to influence MTAC recommendations on matters that have been and will be presented to the PRC.

28.  By excluding APWU from MTAC General Session and work group meetings, by refusing to allow APWU the opportunity to comment on issues being considered by MTAC, by barring APWU from access to MTAC documents and the MITS, and by refusing to admit CAPS to membership, the USPS and MTAC have concealed from APWU and CAPS information pertinent to the development of  MTAC and USPS policies, proposals and positions that have been and will be promulgated as postal regulations or policies, or  presented to the PRC as postal positions on policy issues, and have thereby placed the APWU and CAPS at a disadvantage relative to MTAC members and others with access to MTAC meetings and materials..

29.  On November 16, 2006, APWU President William Burrus wrote to the Postal Service Chair of MTAC requesting information about MTAC members and MTAC work groups; descriptions of the subject areas of each work group; copies of minutes of prior MTAC and

workgroup meetings; copies of reports, agendas, updates and recommendations of work groups; and an MITS username and password for access to that system. APWU also sought to make arrangements to attend MTAC and work group meetings.

30.  A USPS official responded to APWU's November 16 letter by letter dated December 8, 2006. The USPS sought an explanation of the relevance of the requested information to the collective bargaining agreement.

31.  On January 9, 2007, APWU's counsel wrote to MTAC and the USPS official who wrote the USPS December 8, 2006 letter. The January 9 letter of APWU's counsel stated that APWU had assumed that the Postal Service and MTAC would have no hesitation about providing the information and documents the Union had requested because there presumably was no reason to keep that information and documents secret, so APWU further assumed that the information would be provided informally in response to the request. However, the January 9 letter further stated that APWU also sought the information and documents pursuant to the Federal Advisory Committee Act.

32.  On January 26, 2007 the Postal Service official who responded to APWU's November 16, 2006 letter sent another letter APWU. The January 26 letter asserted that the Federal Advisory Committee Act is inapplicable to the Postal Service, and that the USPS would provide certain information that "has been available without a MTAC Issue Tracking System (MITS) password". The January 26 letter provided lists of MTAC members and work groups, the subject areas of the work groups and the dates of future MTAC meetings. The January 26 letter also provided copies of minutes from meetings of the prior year and copies of certain reports to the extent that they were reported in MTAC General Sessions from the prior year. However, the minutes only

conveyed summaries of work group reports and referenced other documents and presentations that were not produced by the USPS. The January 26 letter refused to provide APWU with MITS access information, so APWU could not view materials that were available to and used by MTAC members and MTAC work group members. The January 26 letter also stated that "Attendance at MTAC General Session and individual work group meetings is restricted to MTAC members, member-invited and approved MTAC guests." The January 26 USPS letter did not authorize APWU to attend any MTAC meeting.

33. On February 13, 2007, counsel for the APWU again wrote to MTAC and the USPS official who had been writing to APWU stating that the documents provided were "of only limited utility since the most informative items are merely descriptions of the subjects discussed, which in turn refer to more detailed presentations and reports that have not been produced". The February 13 letter renewed APWU's requests for the reports, agendas, updates and recommendations of MTAC work groups, the full materials made available to MTAC members and others who attend MTAC meetings, and MITS access authority. The February 13 letter also requested that APWU Executive Vice President Cliff Guffey or his designee be authorized to attend the MTAC General Session meeting and certain work group meetings that were scheduled for February 21 and 22, 2007.

34. Sometime during the last months of 2006, the MTAC website and MITS were changed so that no MTAC or MTAC work group materials or information are available without an MITS password.

35. In February of 2007, Phillip Tabbita , APWU Manager Negotiation Support made e-mail requests to the MTAC Postal Chair and stating that he was no longer able to access certain

MTAC information that had been publicly available in the past and requested access to such information. An MTAC official responded to Mr. Tabitta by referring him to the USPS letter of January 26, 2007, and by advising him that access to any MTAC website materials now requires a password.

36.  MTAC and MTAC work groups held meetings on or about February 21 and 22, 2007. The USPS and MTAC did not authorize an APWU representative to attend any of those meetings.

37.  On April 2, 2007, the USPS co-chairperson of MTAC responded to the February 13, 2007 letter of APWU's counsel and stated that "[w]e are treating your letter as an informal Freedom of Information Act (FOIA) request. She then refused to produce the information sought, beyond what had already been provided, asserting that it was exempt from disclosure under certain exemptions to the FOIA. Among other things, the April 2 letter asserted that MTAC reports, agendas, updates and recommendations are exempt from disclosure under FOIA exemption 5 covering pre-decisional and deliberative process materials. The April 2 letter also asserted that the requested materials were exempt from disclosure pursuant to FOIA exemption 5, which exempts materials exempted by other statutes, 39 U.S.C. §410(c)(5) which in turn, the letter said, allows the USPS to withhold consultant reports from disclosure under the FOIA. Finally, the April 2 letter denied APWU an MITS password and ability to attend MTAC meetings on the basis that these requests were outside the scope of the FOIA.

38.  As of the date of this complaint, the USPS and MTAC have not authorized an APWU or CAPS representative to attend MTAC and/or MTAC work group meetings.

39.  As of the date of this complaint, the USPS and MTAC have not provided APWU with information and materials beyond those provided with the USPS letter of January 26, 2007. In

particular the USPS and MTAC have not provided APWU with the reports, agendas, updates and recommendations of MTAC work groups, the full materials made available to MTAC members and others who attend MTAC meetings, or MITS access authority. The April 2, 2007 letter of the USPS co-chairperson of MTAC which treated the APWU requests for access to materials and meetings as FOIA requests essentially denied APWU's access to the documents and meetings that it had sought..

40.  On May 7, 2007, the *Business Mailers Review* reported that MTAC workgroups were studying new possible service standards mandated for the USPS under the new Postal Accountability and Enhancement Act and that several "sub-groups" would make recommendations regarding new service standards to the PRC in September of 2007.

41.  APWU and CAPS have been denied the ability to attend MTAC General Session and work group meetings, to receive complete MTAC and MTAC work group documents and access to the MITS because the USPS and MTAC have refused to provide APWU and CAPS with access to such meetings, access to such documents, and access to the MITS.

42.  Under the recently enacted Postal Enhancement and Accountability Act, the Postal Service must, by December 2007, "in consultation with the Postal Regulatory Commission, by regulation establish (and may from time to time thereafter by regulation revise) a set of service standards for market-dominant products." MTAC has established one or more work groups to consider service standards and to develop recommendations for service standards.

43.  Service standards set by the USPS under the PEAE will determine the value of mail to mailers and the American pubic.  The regulations are required to enhance the value of postal services to both senders and recipients; preserve regular and effective access to postal services in

14

all communities, including those in rural communities where post offices are not self sustaining; reasonably assure postal customers delivery reliability, speed and frequency consistent with reasonable rates and best business practices; and provide a system of objective external performance measurements.

44. In the promulgation of service standard regulations, the USPS has discretion it will exercise as to the scope and effect of the standards and the content of regulations to be applied to them. Because the USPS has a significant range of discretion in its actions in promulgating its regulations, the MTAC activities concerning service standards, insofar as they influence or affect the exercise of the Postal Service's discretion, result in changes in the regulations that could not be achieved through any public process of comment or legal challenge.

45. The MTAC work group on service standards and service performance measurement systems for market dominant products has been broken into four sub-groups, by product: First Class Mail, Periodicals, Standard Mail, and Packages.

46. The MTAC work group on service standards has more than 160 members, including a number of observers from the postal regulatory

47. There is a huge interest in the new MTAC work group on setting service standards and measurements. About 25 percent of the persons who attend MTAC want to be part of the work group, which is designed to work with the Postal Service to set up its service standards that must be prepared by December. In the opinion of expert advocates on behalf of large mailers, participation in MTAC provides a golden opportunity to get some input on service standards and how they should be measured, for the purpose of advancing the business interests of the mailers.

48. Because APWU has not been permitted access to MTAC work groups or meetings,

and because CAPS has been denied admission to MTAC, neither APWU nor CAPS will be permitted by MTAC to participate in the development of service standards by USPS and the PRC through MTAC workgroups.  No comparable opportunity exists for input or participation in the development of the service standards and measurement standards.

49.  As a result of the fact that USPS will develop its service standard regulations through MTAC work group meetings, APWU, CAPS, and the public will not be permitted to participate in the development of those service standards, although large mailers and their representatives, through MTAC, will be permitted to provide advice on and to participate in the development of those regulations.

50.  As a result of the activities of MTAC, USPS and PRC representatives, the service standard regulations finally issued or proposed by the USPS will bear the imprimatur not only of the USPS, but also of MTAC, large mailer representatives, and PRC officials.  That fact will truncate and limit the effectiveness of any public comment or review process and of any legal challenge to those regulations.

51.  Insofar as the USPS "consultation" with the PRC on service standards occurs privately, through MTAC work groups or meetings, rather than on the public record, APWU, CAPS, and the American public will be denied the right to have a meaningful opportunity to comment on and to affect the content of the regulations.

52.  As a result of the USPS and MTAC refusal to allow APWU access to MTAC and MTAC work group meetings and documents, and access to the MITS system, APWU and its members have been denied various rights under the Federal Advisory Committee Act.  APWU has been deprived of knowledge of MTAC and MTAC work group activities and plans, deprived of

16

access to MTAC documents and papers, and deprived of knowledge of MTAC and MTAC work group recommendations. APWU has been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups on issues of interest to APWU and its members with respect to MTAC and MTAC work group advice and recommendations to the USPS on subjects where APWU, its members, its locals and its Health Plan are, or are likely to be, affected by USPS adoption of MTAC recommendations, or reliance on MTAC advice.

53.  As a result of the USPS and MTAC refusal to allow APWU access to MTAC and MTAC work group meetings and documents, and access to the MITS system in accordance with the Federal Advisory Committee Act,  APWU has been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups, to thereby give input for, and to attempt to influence, the advice and recommendations of MTAC and its work groups on issues of interest to APWU, its members, its locals and its Health Plan when MTAC members and MTAC work group members are giving advice and recommendations on those issues.

54.  Consumer Alliance for Postal Services (CAPS), as part of its activities to support postal services for individuals and small businesses, applied for membership in MTAC, using the procedures established by MTAC for that purpose.  USPS and MTAC arbitrarily and discriminatorily refused to admit CAPS into membership.

55.  USPS and MTAC willfully and arbitrarily have excluded from MTAC membership CAPS and other small mailers or representatives of individuals or small mailers.  As a result, MTAC's membership is unfair and unbalanced.  USPS and MTAC have acted arbitrarily and have abused their discretion by excluding all or virtually all persons and groups who do not represent large mailers.

56.  As a result of the USPS and MTAC refusal to admit CAPS, CAPS and its member organizations have been deprived of knowledge of MTAC and MTAC work group activities and plans, deprived of access to MTAC documents and papers, and deprived of knowledge of MTAC and MTAC work group recommendations. CAPS and its member organizations have been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups on issues of interest to CAPS and its member organizations with respect to MTAC and MTAC work group advice and recommendations to the USPS on subjects where CAPS and its member organizations are, or are likely to be, affected by USPS adoption of MTAC recommendations, or reliance on MTAC advice.

57.  As a result of the USPS and MTAC refusal to admit  CAPS, CAPS has been denied the ability to attend, appear before, and/or file statements with MTAC and MTAC work groups, to thereby give input for, and to attempt to influence, the advice and recommendations of MTAC and its work groups on issues of interest to CAPS and its member organizations, when MTAC members and MTAC work group members are giving advice and recommendations on those issues.

58.  After having been denied admission to MTAC, CAPS has sought to obtain USPS and MTAC permission to attend meetings of MTAC and MTAC workgroup meetings, but that permission has not been granted.

<u>CAUSE OF ACTION</u>

59.  APWU and CAPS incorporate by reference as if fully set forth herein each and every allegation of paragraphs 1 through 58.

60.  Among other things, the Federal Advisory Committee Act, 5 U.S. C. App. 2 Section

10, provides

> (a)(1) Each advisory committee meeting shall be open to the public
>
>         *      *      *      *
>
> (a)(3) Interested persons shall be permitted to attend, appear before, or file statements with any advisory committee, subject to reasonable rules or regulations as the Administrator may prescribe
>
> (b)    Subject to section 552 of title 5, United States Code, the records, reports, transcripts minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying....
>
> (c)    Detailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee....

61. By failing and refusing to allow APWU and CAPS access to MTAC General Session meetings, the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act.

62. By failing and refusing to allow APWU and CAPS access to MTAC work group meetings, the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act.

63. By failing and refusing to give APWU and CAPS full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies, the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act.

64. By failing and refusing to give APWU and CAPS access to the MITS system which contains complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies, the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act.

19

65.  The Postmaster General as, Chief Executive Officer of the United States Postal Service is responsible for the actions of his subordinate officers and for the Postal Service's compliance with its legal obligations. By the actions of the Postal Service with respect to the APWU and CAPS efforts to obtain access to MTAC and MTAC work group meetings and documents, the Postmaster General has failed to perform a mimisterial duty to the plaintiffs that is required the Federal Advisory Committee Act.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, APWU and CAPS respectfully ask this Court to:

A.      DECLARE that the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act by failing and refusing to allow APWU and CAPS access to MTAC General Session meetings;

B.      DECLARE that the USPS and MTAC have violated Section 10(a)(1) and (3) of the Federal Advisory Committee Act by failing and refusing to allow APWU and CAPS access to MTAC work group meetings;

C.      DECLARE that the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act by failing and refusing to give APWU and CAPS full access to complete MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers, drafts, and studies,

D.      DECLARE that the USPS and MTAC have violated Section 10(b) of the Federal Advisory Committee Act by failing and refusing to give APWU and CAPS access to the MITS;

E.      ENJOIN the USPS and MTAC to allow APWU and CAPS access to MTAC General Session

20

and work group meetings;

    F.     ENJOIN the USPS and MTAC to allow APWU and CAPS full access to complete

MTAC and MTAC work group records, reports, transcripts minutes, appendixes, working papers,

drafts, and studies; and to the MITS;

    G.     ENJOIN USPS and MTAC from refusing to admit CAPS to membership in MTAC;

    H.     ORDER the Postmaster General to permit plaintiffs to attend MTAC and MTAC

workgroup meetings and to obtain access to MTAC and MTAC workgroup records, reports,

transcripts minutes, appendixes, working papers, drafts, and studies as required by the Federal

Advisory Committee Act; and

    I.     GRANT such other and further relief as the Court  may deem just and proper.

                                 Respectfully submitted,

                                         /s/
                               Richard S. Edelman (D.C. Bar No. 416348)
                               O'Donnell, Schwartz & Anderson, P.C.
                               1900 L Street, N.W., Suite 800
                               Washington, DC 20036
                               Telephone: (202) 898-1824
                               Facsimile: (202) 429-8928
                               e-mail:Redelman@odsalaw.com

                               Darryl J. Anderson, (D.C. Bar No. 154567)
                               Jennifer L. Wood (D.C. Bar No. 500887)
                               O'Donnell, Schwartz & Anderson, P.C.
                               1300 L Street, N.W., Suite 1200
                               Washington, DC 20005
                               Telephone: (202) 898-1707
                               Facsimile: (202) 682-9276
                               e-mail: Danderson@odsalaw.com
                                      Jwood@odsalaw.com

                               Attorneys for Plaintiff American Postal Workers Union
                               and Consumer Alliance for Postal Services

September 11, 2007