# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) |
| | ) |
| CONSUMER ALLIANCE FOR POSTAL SERVICES (CAPS), | ) |
| | ) |
| Plaintiffs, | ) |
| v. | )     Civil Action No. 07-0990 (JR) |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| MAILERS TECHNICAL ADVISORY COMMITTEE, | ) |
| | ) |
| JOHN E. POTTER in his official capacity as Postmaster General and Chief Executive Officer, United States Postal Service | ) |
| | ) |
| Defendants. | ) |

## FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES .................................................................................................iv

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................3

    I.      PLAINTIFFS HAVE FAILED TO SHOW THAT FACA APPLIES
           TO USPS ....................................................................................................3

           A.      The Plain Language Of FACA Indicates That It Does Not Apply
                   To The Postal Service ...............................................................................3

           B.      The Plain Language Of The USPS Exemption In § 410(a)
                   Expressly "Includ[es]" FOIA And The APA As Laws That
                   "Deal[] With" Federal Contracts, Property, Works, Officers,
                   Employees, Budgets, Or Funds, Indicating That Incidental
                   Impacts Are Sufficient For The Exemption To Apply ................................4

           C.      Plaintiffs' Characterization Of MTAC As Threatening Large Mailer
                   Control Over Mail Policy Ignores Congress's Power To Insert
                   Public Accountability Into The USPS Decisionmaking Process By
                   Requiring PRC Participation ......................................................................8

    II.     PLAINTIFFS FAIL TO ESTABLISH THAT FACA PROVIDES A
           PRIVATE RIGHT OF ACTION THAT ALLOWS FACA TO BE
           JUDICIALLY ENFORCED AGAINST AGENCIES THAT ARE NOT
           SUBJECT TO APA REVIEW .....................................................................12

    III.    PLAINTIFFS HAVE NO RIGHT OF ACTION UNDER THE COMMON
           LAW BECAUSE THEIR FACA CLAIMS RAISE NO ALLEGATION
           THAT FEDERAL DEFENDANTS HAVE ACTED ULTRA VIRES ..................17

    IV.    PLAINTIFFS HAVE NO RIGHT OF ACTION UNDER THE
           MANDAMUS ACT ....................................................................................18

    V.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT FACA
           APPLIES TO ALL MTAC WORK GROUPS .......................................................19

           A.      Even If USPS Is Not Exempt from FACA, FACA Only Applies To

MTAC Or MTAC Work Groups To The Extent Each of These Entities Are Shown To Qualify Independently As An Advisory Committee Under FACA ............................................................................19

B.    Plaintiffs' Declarations Containing Factual Allegations About MTAC Work Groups Should Not Be Considered Because They Are Not Based On Personal Knowledge And Improperly Attempt To Amend Plaintiffs' Amended Complaint ...............................................................19

CONCLUSION ......................................................................................................................20

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166 (D.C. Cir. 2003) .................................17

*Alexander v. Sandoval, 532 U.S. 275 (2001) ........................................................2, 13, 14, 15, 19

Am. Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352 (D.C. Cir. 2000) ...................................16

Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007) ..............................................................3

Cannon v. Univ. of Chicago, 441 U.S. 677 (1979) .........................................................14

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984) ...........................................21

Center for Arms Control & Non-Proliferation v. Lago,
    No. 05-682, 2006 WL 3328257 (D.D.C. Nov. 15, 2006) ...................................16, 18-19, 19

City of New York v. Exxon Corp., 697 F. Supp. 677 (S.D.N.Y. 1988) ...........................................6

City of Tacoma v. FERC, 460 F.3d 53 (D.C. Cir. 2006) ......................................................17

Concept Automation, Inc. v. USPS, 887 F. Supp. 6 (D.D.C. 1995) .................................................5

Cort v. Ash, 422 U.S. 66 (1975) .............................................................................13

Cummock v. Gore, 180 F.3d 282 (D.C. Cir. 1999) ...........................................................2, 3, 13, 19

Dow Jones & Co. v. USPS, 110 F.3d 80 (D.C. Cir. 1997) .............................................................10

Ellipso Inc. v. Draim, No. 06-1373, 2007 WL 1866799 (D.D.C. Jun. 28, 2007) ............................3

FDIC v. Bender, 127 F.3d 58 (D.C. Cir. 1997) ..............................................................3

Fertilizer Inst. v. EPA, 938 F. Supp. 52 (D.D.C. 1996) ...................................................12

Food Chemical News, Inc. v. Davis, 414 F. Supp. 1048 (D.D.C. 1974) .......................................19

Food Chem. News v. Dep't of Health & Human Servs., 980 F.2d 1468 (D.C. Cir. 1992) ............13

F.S. Bowen Elec. Co. v. J.D. Hedin Constr. Co., 316 F.2d (D.C. Cir. 1963) .................................20

Goland v. Central Intelligence Agency, 607 F.2d 339 (D.C. Cir. 1978) ...........................................7

Hopkins v. Women's Div., Gen. Bd. of Global Ministries,
    238 F. Supp. 2d 174 (D.D.C. 2002) .......................................................................................3

Int'l Brominated Solvents Ass'n v. Am. Conf. of Govt'l Indus. Hygienists, Inc.,
    393 F. Supp. 2d 1362 (M.D. Ga. 2005) ...............................................................................12

Lampkin v. Dist. of Columbia, 27 F.3d 605 (D.C. Cir. 1994) .......................................................14

Lemon v. Harvey, 448 F. Supp. 2d 97 (D.D.C. 2006) ....................................................................16

*Mail Order Ass'n v. USPS, 986 F.2d 509 (D.C. Cir. 1993) ...........................................................5

Mail Order Ass'n v. USPS, 2 F.3d 408 (D.C. Cir. 1993) ...............................................................10

Mayor & Bd. of Alderman v. Drew Chem. Corp., 621 F. Supp. 663 (D.C.N.J. 1985) ...................6

Nat'l Ass'n of Home Builders v. Norton,
    298 F. Supp. 2d 68 (D.D.C. 2003), aff'd 415 F.3d 8 (D.C. Cir. 2005) ...............................12

Nat'l Ass'n of Postal Supervisors v. USPS, 602 F.2d 420 (D.C. Cir. 1979) .................................18

*Nat'l Easter Seal Soc'y v. USPS, 656 F.2d 754 (D.C. Cir. 1981) .............................................5, 6

Peoples Gas, Light & Coke Co. v. USPS, 658 F.2d 1182 (7th Cir. 1981) ....................................17

United States v. Cornelio-Pena, 435 F.3d 1279 (10th Cir. 2006) ...................................................6

UPS, Inc. v. USPS, 184 F.3d 827 (D.C. Cir. 1999) .......................................................................10

Wy. Sawmills, Inc. v. U.S. Forest Serv., 179 F. Supp. 2d 1279 (D. Wyo. 2001) .........................12

## STATUTES

5 U.S.C. § 551 ..........................................................................................................................3, 4, 12

Freedom of Information Act, 5 U.S.C. § 552 .............................................................................1, 5

Privacy Act, 5 U.S.C. § 552a .........................................................................................................5

Government in the Sunshine Act, 5 U.S.C. § 552b ........................................................................5

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ......................................................5

Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 ......................................................1

5 U.S.C. app. 2 § 3 .................................................................................................................3, 19

5 U.S.C. app. 2 § 10 .........................................................................................7, 14, 15, 16, 17, 19

5 U.S.C. app. 2 § 11 ....................................................................................................................14

28 U.S.C. § 1331 .........................................................................................................................17

28 U.S.C. § 1339 .........................................................................................................................17

Mandamus Act, 28 U.S.C. § 1361 ...............................................................................................17

Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101-5605 ........................................................1

39 U.S.C. § 401 ...........................................................................................................................17

39 U.S.C. § 410 ................................................................................................................1-12 *passim*

39 U.S.C. § 503 ...........................................................................................................................11

39 U.S.C. § 3622 .........................................................................................................................11

39 U.S.C. § 3691 .........................................................................................................................11

**LEGISLATIVE MATERIALS**

Postal Accountability and Enhancement Act ("PAEA"),
    Pub. L. No. 109-435, 120 Stat. 3198 (2006) ....................................................................10-11

**MISCELLANEOUS**

Singer, 24 Statutes and Statutory Construction § 47.07 (4th ed. 1984) ...........................................6

**INTRODUCTION**

Plaintiffs have failed to establish that the United States Postal Service ("USPS" or "Postal Service") is subject to the requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2.  Indeed, their arguments merely serve to emphasize the fact that the plain language of FACA and the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101-5605, requires the opposite conclusion.  In arguing that FACA applies, plaintiffs inexplicably rely on FACA's definition of "agency" even though that definition incorporates the definition in Title 5 Chapter 5 of the U.S. Code, from which the Postal Service is expressly excluded pursuant to 39 U.S.C. § 410(a).  Plaintiffs also contest the USPS's position that a PRA provision, 39 U.S.C. § 410(a), establishes the default status of the USPS as exempt from general statutes regulating federal agency operations.  In doing so, however, plaintiffs ignore the plain language of the § 410(a) exemption, which when taken as a whole expressly includes laws that only incidentally impact USPS contracts, employees, and property.  By "including" the Freedom of Information Act, 5 U.S.C. § 552, and similar provisions, as laws that "deal[] with" contracts and other areas relevant to USPS business operations within the meaning of the exemption language, Congress clearly indicated that the § 410(a) exemption must be interpreted broadly to include other similar laws, such as FACA, as well.  Further, plaintiffs' extensive discussion of the supposed threat posed by the USPS's use of MTAC to assist in developing its position on mail industry issues from a business perspective is irrelevant to the plain meaning of the statutes and also fails to acknowledge that Congress has the power to insert public participation into postal decisionmaking as it deems appropriate by requiring the USPS to seek recommendations or advice from the Postal Regulatory Commission.

Even if the Court holds that FACA does apply to USPS, plaintiffs have failed to identify any private right of action that would save their Amended Complaint from dismissal for failure to state a claim. Plaintiffs' right of action arguments misconstrue the Supreme Court's controlling decision in Alexander v. Sandoval, 532 U.S. 275 (2001), as having no impact on the analysis of these issues. They also mistakenly equate their claim that FACA provides them a right of access to advisory committee information with ultra vires actions alleging that an agency has exceeded its statutory authority. Plaintiffs also consistently confuse the distinction between the various requirements for bringing a claim, and suggest that because they have standing, and because this Court has jurisdiction, a private right of action necessarily exists. A proper right of action analysis leads to the conclusion that FACA itself contains no express right of action or rights-creating language, that no right of action is available under the common law, and that the Mandamus Act is merely a device for obtaining a particular form of relief where a right of action already exists. Thus, plaintiffs have no right of action to assert their FACA claims in this Court.

Plaintiffs have also failed to establish that all MTAC work groups necessarily qualify as advisory committees for purposes of FACA. Their attempt to amend their Amended Complaint without leave of the Court through the submission of affidavits that make factual allegations not based on personal knowledge should be rejected.[1]

---

[1]Plaintiffs do not contest federal defendants' argument in support of their motion to dismiss that, even if FACA otherwise applies, nothing in FACA grants them a right to access MTAC's computer information system (MITS) by receiving a MITS password. See Pls.' Opp. Mem. at 29 n.6 (doc. #18). Plaintiffs also do not raise any significant argument contrary to federal defendants' assertion that they cannot raise a fair balance claim or ask the Court to require that a particular individual or organization be made a member of an advisory committee. See Pls.' Opp. Mem. at 38 n.10. (While plaintiffs cite Cummock v. Gore, 180 F.3d 282, 291 (D.C. Cir. 1999), as support for the idea that "persons directly affected by a committee's work [need to] have some representation on the committee," Pls.' Opp. Mem. at 29 n.6, Cummock

**ARGUMENT**[2]

**I.    PLAINTIFFS HAVE FAILED TO SHOW THAT FACA APPLIES TO USPS**

    **A.    The Plain Language Of FACA Indicates That It Does Not Apply To The Postal Service**

Plaintiffs' argument that FACA applies to USPS relies entirely on the FACA provision adopting the definition of "agency" in 5 U.S.C. § 551(1).[3]  See 5 U.S.C. app. 2 § 3(3) (providing that "[t]he term 'agency' has the same meaning as in section 551(1) of title 5, United States Code").  Yet, the fact that FACA only applies to those entities that qualify as agencies under 5

---

merely held that an individual who was already a committee member had a right to participate in the committee's work.  See id.).  Even if the Court rejects federal defendants' motion to dismiss in other respects, the Court should therefore treat federal defendants' arguments on these points as conceded by plaintiffs and should strike plaintiffs' claims for relief in the form of a MITS password or MTAC membership.  Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.")).

[2]It should be noted that plaintiffs erroneously rely on the standard of review for a motion to dismiss for failure to state a claim that was in effect before the Supreme Court's decision in Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007).  See Pls.' Opp. Mem. at 18-19.  The Court in Twombly expressly abandoned the "no set of facts" standard that plaintiffs cite.  See Twombly, 127 S. Ct. at 1969; Ellipso Inc. v. Draim, No. 06-1373, 2007 WL 1866799, at *1 (D.D.C. Jun. 28, 2007) (recognizing "no set of facts" standard as "undercut, if not obliterated," by Twombly).  Federal defendants have correctly set forth the applicable standard of review in their opening brief.  See Fed. Defs.' Op. Br. at 10-11 (doc. #11); cf. Twombly, 127 S. Ct. at 1965 & n.3 (finding that a complaint must contain a "statement of circumstances, occurrences, and events in support of the claim presented" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level" (internal quotation and citation omitted)).

[3]That section defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."  5 U.S.C. § 551(a).  The section lists a number of exceptions, not including the Postal Service, but does not indicate that this list is exhaustive or that other exceptions could not be included in other statutory provisions.

U.S.C. § 551(1) actually requires the conclusion that FACA does not apply to USPS.  Section

551(1) is within chapter 5 of title 5 of the U.S. Code.  As plaintiffs acknowledge, 39 U.S.C. §

410(a) explicitly exempts USPS from title 5 chapter 5.  See 39 U.S.C. § 410(a) ("the provisions

of chapter[] 5 . . . of title 5[] shall [not] apply to the exercise of the powers of the Postal

Service").  While 39 U.S.C. § 410(b) makes some provisions in title 5 chapter 5 applicable to the

Postal Service, § 551 is not among those provisions.[4]  The definition of "agency" in § 551

therefore cannot be read to include the Postal Service because the Postal Service is expressly

exempted from § 551 by 39 U.S.C. § 410.  The plain language of FACA therefore does not

support plaintiffs' argument and in fact undermines it.  In effect, by incorporating in FACA the

definition of "agency" in 5 U.S.C. § 551(1), Congress indicated that it did not intend FACA to

apply to the exercise of the powers of the Postal Service.

> **B.**    **The Plain Language Of The USPS Exemption In § 410(a) Expressly "Includ[es]" FOIA And The APA As Laws That "Deal[] With" Federal Contracts, Property, Works, Officers, Employees, Budgets, Or Funds, Indicating That Incidental Impacts Are Sufficient For The Exemption To Apply**

Whether or not the term "agency" in 5 U.S.C. § 551(1) includes the Postal Service, the

Postal Service is exempt from FACA pursuant to a provision of the PRA, 39 U.S.C. § 410(a).

As federal defendants explained in their opening brief, § 410(a) establishes the Postal Service's

default status as exempt from any laws that would impact, even incidentally, its business

operations.  The provision states that "no Federal law dealing with public or Federal contracts,

---

[4]For those provisions in title 5 chapter 5 that do apply to the Postal Service, the term "agency" in those provisions includes the Postal Service not because it qualifies as an "agency" for purposes of § 551(1) but because 39 U.S.C. § 410(b) expressly states that those specific provisions shall apply to the Postal Service.

property, works, officers, employees, budgets, or funds, <u>including</u> the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a) (emphasis added).

Plaintiffs essentially interpret the phrase "dealing with" in § 410(a) to mean exclusively dealing with, and therefore suggest that FACA's requirements relating to federal advisory committees cannot be viewed as "dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds." Pls.' Opp. Mem. at 21-22. However, plaintiffs' interpretation contravenes the plain language of the statute as well as the purpose of the PRA – as recognized in numerous court opinions – to vest the Postal Service with considerable autonomy to carry out its functions in a businesslike manner.[5] Section 410(a) expressly "includ[es]" all "provisions of chapters 5 and 7 of title 5" as federal laws that "deal[] with public or Federal contracts, property, works, officers, employees, budgets, or funds." 39 U.S.C. § 410(a). Plaintiffs emphasize that the provisions of FACA are not housed in Title 5 chapters 5 and 7. Pls.' Opp. Mem. at 23-24. But that is not the point. Chapters 5 and 7 of title 5 contain such laws as the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, <u>id.</u> § 552a, the Government in the Sunshine Act, <u>id.</u> § 552b, and the judicial review provisions of the Administrative Procedure Act ("APA"), <u>id.</u> §§ 701-706. All of those laws, then, qualify as laws that "deal[] with public or Federal contracts, property, works, officers, employees, budgets, or

---

[5] <u>See, e.g.</u>, <u>Mail Order Ass'n v. USPS</u>, 986 F.2d 509, 519 (D.C. Cir. 1993) (recognizing Congress's view that "the key to ending [Postal Service] inefficiency was to give the nation's postal service more independence – independence from political pressures and independence to manage its operations in a professional, businesslike manner"); <u>Concept Automation, Inc. v. USPS</u>, 887 F. Supp. 6, 10 (D.D.C. 1995) (recognizing that the D.C. Circuit in <u>Nat'l Easter Seal Soc'y v. USPS</u>, 656 F.2d 754 (D.C. Cir. 1981), "forcefully suggested that, in its purely business decisions, the Postal Service was to be left largely alone"); <u>see also</u> Fed. Defs.' Op. Br. at 12-13.

funds" within the meaning of § 410(a).[6]

Clearly, title 5 chapters 5 and 7 are not the <u>only</u> laws that so qualify.[7]  The use of the word "including" in § 410(a) indicates that the example that follows the word is illustrative rather than exhaustive, and triggers a recognized exception to the principle of statutory construction, *expressio unius est exclusio alterius* (the express mention of one thing excludes others).  <u>See</u> <u>City of New York v. Exxon Corp.</u>, 697 F. Supp. 677, 684 (S.D.N.Y. 1988) (recognizing that "'the word includes is usually a term of enlargement, and not of limitation" (quoting <u>Mayor & Bd. of Alderman v. Drew Chem. Corp.</u>, 621 F. Supp. 663, 666 (D.C.N.J. 1985) (quoting Singer, 24 <u>Statutes and Statutory Construction</u> § 47.07 (4th ed. 1984))).

The express mention of title 5 chapters 5 and 7 in this context signifies that the § 410(a) exemption should be interpreted broadly.  It cannot be said that the core purpose of the FOIA or the Privacy Act is to regulate government contracts, property, works, officers, employees, budgets, or funds.  Yet, these laws do have an incidental effect on aspects of Postal Service business operations and are included as laws that "deal[] with" contracts,  property, works,

---

[6]The D.C. Circuit has previously recognized this interpretation as reasonable.  <u>See</u> <u>Nat'l Easter Seal Soc'y</u>, 656 F.2d at 766 ("[T]he language of [§ 410(a)] indicates that the Postal Service is not bound by <u>any</u> federal law involving those particular subjects, <u>including</u> the two specified chapters of title 5.  It seems that Congress viewed the APA as a statute pertaining to one or more of the exempt areas . . . ." (emphasis added)).

[7]One court has observed that "'[i]nclude' can be interpreted both as a word of illustrative application and as a word of limitation."  <u>United States v. Cornelio-Pena</u>, 435 F.3d 1279, 1284 (10th Cir. 2006).  To interpret "including" here as a word of limitation, however, would require the conclusion that no laws outside chapters 5 and 7 of title 5 could qualify as laws that "deal[] with" public or federal contracts, property, works, officers, employees, budgets, or funds.  Such an interpretation would exclude government procurement laws and other laws that clearly qualify as laws "dealing with" the listed subject areas, and courts have repeatedly recognized that § 410(a) exempts the Postal Service from such laws even though they are outside of title 5.

officers, employees, budgets, or funds within the meaning of § 410(a).[8]  Thus, these laws would

not apply to the Postal Service if they were not made expressly applicable in 39 U.S.C. § 410(b).

As explained in federal defendants' opening brief, FACA – to at least the same extent as the

FOIA – also deals with the listed subjects.  Fed. Defs.' Op. Br. at 16-17.  In addition to the

specific provisions mentioned in the opening brief, FACA generally, as a law addressing agency

use of advisory committees, "deal[s] with" employees and contracts incidentally because

advisory committees can assist an agency in carrying out functions that would otherwise be

assigned to employees or contractors.  Also, one of the specific FACA provisions that plaintiffs

here claim was violated, 5 U.S.C. app. 2 § 10(b), "deal[s] with" property because it concerns

"records, reports, transcripts, minutes, appendixes, working papers, . . . [and] other documents,"

which qualify as property.  See Goland, 607 F.2d at 347.

The plain meaning of both FACA and the PRA therefore compel the conclusion that the

Postal Service is exempt from FACA's requirements.  The weight of judicial authority

recognizing the PRA's purpose as removing the Postal Service from regulations that would

interfere with its businesslike autonomy only bolsters the plain meaning of the statutes, as does

the legislative history emphasizing this purpose, and the Postal Service's own longstanding

---

[8]For example, the FOIA can be said to "deal with" contracts because it might allow USPS
contractors and competitors to obtain information from USPS that would not normally be
obtainable in the business context.  For this reason, presumably, § 410(c) provides that although
the FOIA applies to USPS, it does so in a modified form, and does not require the disclosure of
"information of a commercial nature, including trade secrets."  39 U.S.C. § 410(c)(2).  Similarly,
both the FOIA and the Privacy Act can be said to "deal with" property, incidentally, because
records are considered property.  See, e.g., Goland v. Central Intelligence Agency, 607 F.2d 339,
347 (D.C. Cir. 1978) (holding that an "agency record" is "property subject to the free disposition
of the agency with which the document resides").

interpretation of the PRA's § 410(a) exemption as including FACA within its scope.[9]  Indeed,

every legitimate method of construction points to the same conclusion – that the § 410(a)

exemption must be interpreted broadly and establishes the Postal Service's default status as

exempt from laws that are otherwise generally applicable to federal agency operations unless

those laws are made expressly applicable to the Postal Service.[10]

   **C.    Plaintiffs' Characterization Of MTAC As Threatening Large Mailer Control
          Over Mail Policy Ignores Congress's Power To Insert Public Accountability
          Into The USPS Decisionmaking Process By Requiring PRC Participation**

   Aside from their erroneous statutory interpretations, plaintiffs place heavy emphasis on

the supposedly nefarious consequences that would follow if the Court were to recognize that

FACA does not apply to USPS.  Plaintiffs characterize MTAC as "not merely a source of

---

[9]Plaintiffs would require some "decision or regulation of the USPS" stating that the §
410(a) exemption applies to FACA before according any weight to the USPS's interpretation.
Pls.' Opp. Mem. at 28.  However, the fact that USPS does not consider FACA applicable to its
operations makes it unlikely that USPS would have promulgated any regulation or issued any
decision having to do with FACA.  Since FACA's enactment thirty-five years ago, when USPS
initially took the position that it was exempt from FACA's requirements pursuant to § 410(a),
and both Congress and the OMB accepted that position, FACA's applicability has simply been a
non-issue.  Plaintiffs cannot credibly suggest that there is any dispute in this regard by pointing to
the absence of any further USPS statements repeating an interpretation that had already been
accepted without protest by all concerned.

[10]Plaintiffs incorrectly characterize federal defendants' position in its opening brief
concerning MTAC's status as a consultant, which qualifies its records as exempt from disclosure
under the FOIA pursuant to 39 U.S.C. § 410(c)(5), to the same extent that they would be exempt
if prepared within USPS.  Plaintiffs assert that federal defendants have failed to establish that
MTAC qualifies as a consultant.  However, USPS designated MTAC as a consultant for purposes
of the FOIA when responding to APWU's request for MTAC records, which it construed as an
informal FOIA request, see Am. Compl. ¶ 37; Pls.' Opp. Mem. ex. 2, at 12-13 (April 2, 2007
Letter from Susan M. Plonkey to William Burrus and Richard S. Edelman), and APWU has not
appealed that decision.  In any case, federal defendants' argument that USPS is exempt from
FACA under the plain meanings of both statutes  does not rely on the status of MTAC as a
"consultant" within the meaning of 39 U.S.C. § 410(c)(5).

technical information and advice" but also a "sounding board for, and recommender of, proposals

for changes in Postal operations, policies, and rules."  Pls.' Opp. Mem. at 26.  They claim that the

Postal Service has acted on recommendations provided by MTAC and MTAC work groups by

"adopting and/or promulgating new rules, procedures, work practices and/or processes; altering

existing procedures, rules, work practices and/or processes; purchasing or modifying equipment;

and /or altering prices and/or charges" and imply that this practice is unfair to plaintiffs because

plaintiffs allegedly had no opportunity to participate in the decisionmaking process.  Id. at 26-27

(characterizing the issue as "whether, despite the FACA, only certain outsiders can have input

into decision-making and whether other outsiders can be barred from giving their views and even

from access to basic information").  According to plaintiffs, MTAC's influence on USPS has

resulted in a bias in favor of large mailers and thus "necessarily adverse to smaller mailers."  Id.

at 27.[11]

Even if true, none of this affects the plain meaning of the statutory provisions at issue.

---

[11]To the extent plaintiffs' arguments depend on their assertion that only large mailers are members of MTAC, they should be rejected as based on a wholly unsubstantiated assumption. As noted below, the declarations on which plaintiffs rely for this notion are not based on personal knowledge; in addition, they are inconsistent with other exhibits that plaintiffs have submitted. Specifically, the first Tabbita Declaration asserts that "MTAC members are typically large mailers" and lists corporations including Bank of America, Pitney Bowes, Siemens, Capital One, Verizon, AT&T, Time, Discover, and Sprint.  First Tabbita Decl. ¶ 4 (ex. A to plaintiffs' original opposition memorandum ("Pls.' First Opp. Mem.") (doc. #13)).  However, none of these entities appear on the list of MTAC members that USPS provided to APWU.  See Pls.' First Opp. Mem. ex. 2, at 6.  While it is possible that these entities may belong to one of the membership organizations that are MTAC members, plaintiffs' implicit suggestion that these major corporations are somehow dominating USPS decisionmaking is misleading.  Some of the entities that do appear on the MTAC member list, such as CRPA/Associated Church Press, City & Regional Magazine Association, Custom Publishing Council, DMA Nonprofit Federation, and National Association of College and University Mail Services (NACUMS), see id., could not accurately be described as representing the interests of "large mailers."

Furthermore, these allegations reveal plaintiffs' real interest here as attempting to compel USPS to give them greater access to participation in USPS's decisionmaking processes in order to counterbalance the supposed influence of large mailers. As noted in federal defendants' opening brief, the notion that Congress intended to require public participation in USPS decisionmaking through FACA, when it expressly exempted USPS from public participation requirements in regard to USPS's own rulemaking processes, defies common sense. See Defs.' Op. Br. at 19.

In fact, the structure of USPS decisionmaking demonstrates that Congress has devised an explicit mechanism for distinguishing those USPS decisions that, in its view, warrant public participation from those that do not – namely, the requirement, for the former category of decisions, that the Postal Regulatory Commission ("PRC") participate in the process in some way. For example, USPS decisions related to postal rates – a subject closely tied to the core public function of the Postal Service as providing universal mail delivery – must take into account recommendations from the PRC, which is "an active and independent participant in postal ratemaking." Mail Order Ass'n v. USPS, 2 F.3d 408, 414 (D.C. Cir. 1993). Unlike USPS, the PRC must, prior to issuing a rate recommendation decision, conduct a hearing pursuant to the APA, which "must give users of the mails, the Postal Service, and an officer of the [PRC] who represents the interest of the general public an opportunity to be heard." Id.; see also id. at 422-23 (describing further the balance of authority between the PRC and USPS); UPS, Inc. v. USPS, 184 F.3d 827, 834 (D.C. Cir. 1999) (recognizing the PRC's "duty to evaluate [USPS] proposal[s] independently"); Dow Jones & Co. v. USPS, 110 F.3d 80, 85 (D.C. Cir. 1997) (describing PRC's obligation to provide public notice and a hearing before submitting a recommendation to USPS). In 2006, Congress further enhanced the PRC's authority through the Postal Accountability and

-10-

Enhancement Act ("PAEA"), Pub. L. No. 109-435, 120 Stat. 3198 (2006), which directed the

PRC to establish "a modern system for regulating rates and classes for market-dominant

products." 39 U.S.C. § 3622(a).  The PRC is to establish this system by regulation, and unlike

USPS, PRC rulemaking must follow the APA's notice and comment requirements.  See 39

U.S.C. § 503 ("The P[RC] shall promulgate rules and regulations and establish procedures,

subject to chapters 5 and 7 of title 5, and take any other action they deem necessary and proper to

carry out their functions and obligations to the Government of the United States and the people

as prescribed under this title.").  In regard to the new service standards that the PAEA requires,

USPS must "consult[] with" the PRC in establishing these standards, and the PRC may review

any complaints about the standards that are adopted.  39 U.S.C. § 3691(a), (d).

        This structure, together with the § 410(a) exemption, essentially allows Congress to

designate specific areas where USPS's default business discretion is subjected to greater public

accountability.  USPS's relationship with MTAC has not been designated as one of these areas.

In effect, any advice or recommendations provided to USPS by MTAC is intended to assist

USPS in developing its position on issues from a business perspective.  Where Congress deems

appropriate, other perspectives are inserted into the process through the involvement of the PRC.

Thus, as explained in federal defendants' opening brief, USPS's relationship with MTAC is an

exercise of its business discretion.  Recognizing the plain language of § 410(a) as exempting

USPS from FACA is wholly consistent with the decisionmaking structure that Congress has

established and maintains the proper balance between USPS's businesslike operations, on the

one hand, and the PRC's protection of the public interest, on the other.

II.    **PLAINTIFFS FAIL TO ESTABLISH THAT FACA PROVIDES A PRIVATE RIGHT OF ACTION THAT ALLOWS FACA TO BE JUDICIALLY ENFORCED AGAINST AGENCIES THAT ARE NOT SUBJECT TO APA REVIEW**

Even if the Court concludes that USPS is not exempt from FACA, plaintiffs have not overcome the other significant obstacle to their claims – the absence of a private right of action. As federal defendants noted in their opening brief, Fed. Defs.' Op. Br. at 24, judicial review of alleged FACA violations by entities that meet the APA's definition of "agency" in 5 U.S.C. § 551(1) may be available under the APA.  Nat'l Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 71 n.1 (D.D.C. 2003) (recognizing that "the APA . . . governs the availability of review of FACA claims against an agency"), aff'd 415 F.3d 8 (D.C. Cir. 2005); Fertilizer Inst. v. EPA, 938 F. Supp. 52, 54 (D.D.C. 1996) ("Since FACA contains no provision for judicial review, the availability of such review must derive from the APA."); see also Int'l Brominated Solvents Ass'n v. Am. Conf. of Govt'l Indus. Hygienists, Inc., 393 F. Supp. 2d 1362, 1378 (M.D. Ga. 2005) ("Although Plaintiffs do not have a cause of action under FACA, they are nevertheless entitled to enforce FACA's substantive requirements through the judicial review provisions of the APA . . . ." (footnote omitted)); Wy. Sawmills, Inc. v. U.S. Forest Serv., 179 F. Supp. 2d 1279, 1298 (D. Wyo. 2001) (recognizing that "FACA . . . does not have an enforcement provision" and that, "[a]s such, all FACA claims fall under the APA").  However, as is undisputed here, the APA's judicial review provisions do not apply to the Postal Service.  39 U.S.C. § 410(a). Because FACA itself contains no private right of action, plaintiffs have no means of asserting a FACA claim against the Postal Service.[12]

_____

[12]Plaintiffs contend that the executive and congressional oversight that FACA requires does not extend to FACA's provisions concerning public access to records and meetings, and that Congress may have intended different FACA provisions to be enforced differently.

Plaintiffs devote a great deal of effort to asserting that this Circuit did recognize a private right of action under FACA prior to the Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275 (2001). In doing so, plaintiffs grossly mischaracterize the D.C. Circuit's decision in Cummock v. Gore, 180 F.3d 282 (D.C. Cir. 1999).[13] More significantly, however, plaintiffs erroneously claim that the Supreme Court's decision in Sandoval did not fundamentally change how lower courts should approach the question of whether a given statute provides a private right of action. Contrary to plaintiffs' assertions, the Court in Sandoval did not follow the four-factor framework that had previously applied to right of action determinations, as set forth in Cort v. Ash, 422 U.S. 66 (1975). Rather, the Court in Sandoval began and ended with the statute's text and structure. 532 U.S. at 288. Plaintiffs suggest that, under the Sandoval analysis, if a statute's text and structure "clearly demonstrate[] Congressional intent, that would be dispositive." Pls.' Opp. Mem. at 33. However, what is dispositive under Sandoval is Congress's failure to express, in a statute's text or structure, an intent to create a private right of action. Sandoval, 532 U.S. at 288 (recognizing as conclusive the fact that "'rights-creating' language" was "completely absent"

---

However, the absence of alternative enforcement mechanism is an insufficient indicator of Congress' intent to create a private right of action, for the reasons explained below. Furthermore, the APA does provide an enforcement mechanism in regard to those entities considered "agencies" within the meaning of the APA.

[13]Contrary to plaintiffs' assertion, the court in Cummock did not base its conclusion that "members of the public possess enforceable rights to obtain information under FACA" on an extensive analysis of FACA. See Cummock, 180 F.3d at 292. The court in Cummock addressed the question of whether a committee member had a private right of action under FACA. It noted that the government conceded that a committee member had at least the same rights as a member of the public, and then simply stated that members of the public had a private right of action "under our precedent." Id. However, the case Cummock cited as "precedent" in this regard did not actually hold that FACA contained a private right of action. See Food Chem. News v. Dep't of Health & Human Servs., 980 F.2d 1468, 1472 (D.C. Cir. 1992).

-13-

from the statute in question).

Here, while FACA § 10(a) and (b) use the word "shall" and thus may be construed as imposing mandatory duties on agencies and their advisory committees, they do not contain "rights-creating" language as described by the Court in Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13 (1979). The Court in Cannon distinguished language that imposed duties on the government from language that conferred rights on a particular class of persons. Id. (listing examples of rights-creating provisions). Because government duties apply to the public at large, such language does not confer any individual right. Id. (recognizing that "the Court has been especially reluctant to imply causes of actions under statutes that create duties . . . for the benefit of the public at large"). While plaintiffs contend that they are "of a class for whose benefit [FACA] was enacted," they fail to distinguish how this "class" differs from the general public. See Pls.' Opp. Mem. at 33. Section 10(a) provides that "[e]ach advisory committee meeting shall be open to the public." 5 U.S.C. app. 2 § 10(a)(1). It further provides that "[i]nterested persons shall be permitted to attend, appear before, or file statements with any advisory committee." Id. § 10(a)(3). Section 10(b) provides that records and other materials "shall be available for public inspection." Id. § 10(b). A class of "interested persons" is hardly distinguishable from the general public since presumably only interested members of the public would ever take advantage of an advisory committee's duty to open its meetings or make its records available for inspection. Thus, following the analyses of the Court in Sandoval and in Cannon, FACA § 10 contains no expression of an intent to create a private right of action.[14]

_____

[14]Plaintiffs also appear to argue that individuals have a right of action to enforce FACA § 11, 5 U.S.C. app. 2 § 11. It should be noted that plaintiffs' Amended Complaint does not actually assert a claim under § 11. In any case, any such claim would be subject to dismissal for

-14-

Plaintiffs argue that FACA should be construed as including a private right of action because at the time of FACA's enactment in 1971, Congress must have imagined that individuals would be able to enforce FACA under the law as it then existed.  Pls.' Opp. Mem. at 35. However, the Supreme Court in <u>Sandoval</u> unequivocally rejected the notion that the "expectations" of "the enacting Congress" have any relevance absent express rights-creating language in the statutory text.  <u>Sandoval</u>, 532 U.S. at 288 ("We have never accorded dispositive weight to [contemporary legal] context shorn of text.").  Because the statutory text here does not contain any express private right of action, or rights-creating language, plaintiffs' argument in this regard is meritless.

Plaintiffs also argue that the fact that the 1971 Congress rejected express inclusion of a private right of action that was narrower than the one plaintiffs now claim exists is proof that Congress intended, not that there be no right of action at all, but that there be a broader right of action than the one it rejected.  Pls.' Opp. Mem. at 36.  This suggestion overturns all principles of logic and should be dismissed out of hand.

Finally, plaintiffs extensively discuss their particular interest in accessing MTAC and MTAC work group meetings and records and suggest that because they qualify as "interested persons," they should have the right to enforce FACA § 10.  Pls.' Opp. Mem. at 36-39.  Indeed, plaintiffs would have the Court believe that they are the only ones who can vindicate the public interests protected by FACA and that the supposed alignment of their interests with those of FACA should somehow affect the Court's analysis of whether FACA contains a private right of action.  For this discussion, plaintiffs again rely on factual assertions contained in declarations

the same reasons asserted in federal defendants' Motion to Dismiss.

-15-

attached to their memorandum.[15]  See Pls.' Opp. Mem. at 36-39.  The more fundamental

problem, however, is that plaintiffs' assertions of interest are simply not relevant to the question

of whether FACA contains a private right of action.  Plaintiffs appear to conflate the right of

action analysis with the analysis of whether a particular plaintiff would have standing to sue, and

indeed they actually suggest that the analysis for determining whether a plaintiff has standing to

bring a claim under FACA § 10 is the same as the analysis for determining whether the provision

contains a private right of action.  Pls.' Opp. Mem. at 40-41.  Of course, the requirement that

there be a private right of action is separate and distinct from the jurisdictional requirement that a

plaintiff have standing to sue, see Lemon v. Harvey, 448 F. Supp. 2d 97, 103 & n.5 (D.D.C.

2006), and plaintiffs fail to cite a single case to the contrary.[16]  As discussed above and in federal

defendants' opening brief, Sandoval sets forth the standard that applies to the question of

---

[15]Plaintiffs evidently misconstrue federal defendants' argument that FACA contains no
private right of action as one that affects this Court's jurisdiction.  See Pls.' Opp. Mem. at 43.
However, it is well established that the absence of a private right of action renders a case subject
to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  See, e.g., Lampkin v. Dist.
of Columbia, 27 F.3d 605, 607 (D.C. Cir. 1994).

[16]Plaintiffs claim that the decision in Center for Arms Control & Non-Proliferation v.
Lago, No. 05-682, 2006 WL 3328257, at *4 (D.D.C. Nov. 15, 2006), supports their position.  See
Pls.' Opp. Mem. at 41.  The excerpt they quote first declares that "the Supreme Court has
essentially assumed that citizens may sue if they have been denied access to records under
FACA."  2006 WL 3328257, at *4.  The court then states, in essence, that even if FACA does
contain a right of action, plaintiffs still need to have standing in order to proceed.  Id. This
decision does not conflate the private right of action and standing analyses as plaintiffs suggest; it
simply recognizes that both requirements must be met.  In some cases, the existence of a
statutory right of action may affect a party's prudential (though not Article III) standing.  See
Am. Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1358 (D.C. Cir. 2000) ("Congress may
grant an express right of action to persons who would otherwise be barred by prudential standing
rules." (internal quotation omitted)).  However, there is no support for the reverse proposition,
that because a party would have standing to bring a claim under a statutory provision, the
provision necessarily confers a right of action.

-16-

whether FACA § 10 contains a private right of action, and the answer to that question, under that

standard, is that it does not.

### III. PLAINTIFFS HAVE NO RIGHT OF ACTION UNDER THE COMMON LAW BECAUSE THEIR FACA CLAIMS RAISE NO ALLEGATION THAT FEDERAL DEFENDANTS HAVE ACTED ULTRA VIRES

Plaintiffs next argue that even if FACA contains no private right of action, they are still

entitled to bring their claims that defendants have violated FACA § 10 under the common law.

This argument is meritless.  For this proposition, plaintiffs rely on cases that have allowed

actions to proceed against USPS on the basis that USPS has acted ultra vires, or outside the

scope of its statutory authority.  See, e.g., Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166, 1172

(D.C. Cir. 2003).  An ultra vires action may be appropriate where the claim is that the agency has

acted "beyond the bounds of its mandate."  City of Tacoma v. FERC, 460 F.3d 53 (D.C. Cir.

2006).  Such a claim exists where, for example, as in Aid Ass'n for Lutherans, an agency has

allegedly promulgated regulations that exceed the statutory authorization granted to it by

Congress, see 321 F.3d at 1172, or where the agency has allegedly violated its own regulations,

see Peoples Gas, Light & Coke Co. v. USPS, 658 F.2d 1182, 1191 (7th Cir. 1981).  In contrast,

plaintiffs' claim that federal defendants have violated FACA § 10 is not equivalent to a claim

that federal defendants have exceeded their statutory authority, and plaintiffs therefore have no

ultra vires claim that can be pursued under the common law.[17]  To the extent plaintiffs assert that

any claim that a government actor has violated a statute qualifies as an ultra vires claim and can

---

[17]An ultra vires claim might assert, for example, that USPS has no statutory authority to establish or utilize MTAC.  Such a claim would fail, however, since Congress, through the PRA, has granted USPS "all . . . powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers."  39 U.S.C. § 401(10).

be reviewed under the common law, acceptance of this assertion would render the private right of action requirement meaningless, along with many other principles of federal law.

Plaintiffs also appear to argue that the common law provides them with a right to sue because this Court has jurisdiction over their claims under 28 U.S.C. §§ 1331 and 1339. However, while jurisdiction, like standing, is a necessary prerequisite to bringing suit, jurisdiction alone does not confer a private right of action; the two are separate and independent requirements.  See Nat'l Ass'n of Postal Supervisors v. USPS, 602 F.2d 420, 429 (D.C. Cir. 1979) ("The existence of a jurisdiction-conferring statute does not alone create a right of action for judicial review of agency action.").[18]

## IV.    PLAINTIFFS HAVE NO RIGHT OF ACTION UNDER THE MANDAMUS ACT

Plaintiffs alternatively assert that they have a right of action pursuant to the Mandamus Act, 28 U.S.C. § 1361.  However, plaintiffs have failed to establish that the Mandamus Act actually is capable of conferring a private right of action where one is not set forth in the underlying statute.  Again plaintiffs confuse jurisdiction, which is available under the Mandamus Act, with a private right of action.  The string of cases plaintiffs cite as holding that there is "mandamus jurisdiction to enforce FACA duties," Pls.' Opp. Mem. at 47, says absolutely nothing about whether there is a right of action to bring a FACA claim pursuant to the Mandamus Act.  In particular, the decision in Center for Arms Control, 2006 WL 3328257,

---

[18]In Nat'l Ass'n of Postal Supervisors, the Court of Appeals held that limited ultra vires review was available in regard to USPS's decisions setting compensation policies for supervisory and managerial employees: "The judicial role is to determine the extent of the agency's delegated authority and then determine whether the agency has acted within that authority.  In this as in other settings, courts owe a measure of deference to the agency's own construction of its organic statute."  Id. at 432.  As discussed above, here plaintiffs ' claim is not properly characterized as alleging USPS acted ultra vires.

discussed above, does not support plaintiffs' contention because the court in that case merely

followed the D.C. Circuit's assumption in <u>Cummock</u> that FACA itself contained a private right

of action.  <u>Id.</u> at *4.  As previously discussed, that assumption is no longer tenable in light of the

Supreme Court's decision in <u>Sandoval</u>.  Significantly, in <u>Center for Arms Control</u> and in <u>Food</u>

<u>Chemical News, Inc. v. Davis</u>, 414 F. Supp. 1048, 1050 (D.D.C. 1974), the court based its

jurisdiction on the Mandamus Act while assuming that FACA § 10 conferred a private right of

action.  This fact belies plaintiffs' assertion that a holding that mandamus relief is unavailable

unless the underlying statute provides a private right of action would place plaintiffs in a Catch-

22 because mandamus relief is only available where a plaintiff cannot seek any other form of

relief.  Pls.' Opp. Mem. at 49.  An underlying statute may provide a private right of action, yet

contain no provision for relief.  In that circumstance, mandamus relief may be available.  Here,

however, it is not available because FACA provides no private right of action.

**V.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT FACA APPLIES TO ALL MTAC WORK GROUPS**

**A.    Even If USPS Is Not Exempt from FACA, FACA Only Applies To MTAC Or MTAC Work Groups To The Extent Each of These Entities Are Shown To Qualify Independently As An Advisory Committee Under FACA**

Plaintiffs rely on FACA's definition of "advisory committee" to argue that MTAC work

groups are automatically subject to FACA's requirements if MTAC is.  Pls.' Opp. Mem. at 28-

29. FACA defines "advisory committee" to include "any committee, board, commission, council,

conference, panel, task force, or other similar group, or any subcommittee or other subgroup

thereof" that meets certain requirements.  5 U.S.C. app. 2 § 3(2).  However, the fact that a

subcommittee <u>may</u> qualify as an "advisory committee" does not mean that all subcommittees so

qualify.  As explained in federal defendants' opening brief, any subcommittee or work group

must meet the same criteria as any other group in order to qualify as an "advisory committee"

that is subject to FACA.  Fed. Defs.' Op. Br. at 31-34.  As previously observed, plaintiffs fail to

set forth any allegations in their Amended Complaint that would support the conclusion that any

particular MTAC work groups qualify as advisory committees.  Id. at 34.

> **B.    Plaintiffs' Declarations Containing Factual Allegations About MTAC Work Groups Should Not Be Considered Because They Are Not Based On Personal Knowledge And Improperly Attempt To Amend Plaintiffs' Amended Complaint**

Plaintiffs attempt to remedy the omissions in their Amended Complaint by submitting

declarations that, rather than making statements based on the declarants' personal knowledge as

required, see Fed. R. Civ. P. 56(e), make unsupported assertions concerning MTAC and its work

groups.  Cf. Pls.' Opp. Mem. at 7 (citing Tabbita declaration and Second Tabbita declaration as

sources of factual allegations concerning MTAC and MTAC work groups); id. at 29 (citing

Tabbita declaration as "show[ing] that the USPS has acted on specific work group reports and

recommendations").  In effect, plaintiffs seek to use these declarations as a means of amending

their Amended Complaint without obtaining leave of the Court to do so, as is required by Fed. R.

Civ. P. 15(a).[19]  Courts have held such an approach to be improper.  See F.S. Bowen Elec. Co. v.

J.D. Hedin Constr. Co., 316 F.2d 362, 364 (D.C. Cir. 1963) (holding district court should not

---

[19]To the extent plaintiffs seek to suggest that federal defendants have conceded that MTAC work groups would qualify as "advisory committees" within the meaning of FACA, federal defendants clarify that they concede no such thing.  Federal defendants' Motion to Dismiss has not addressed the question of whether MTAC or specific MTAC work groups do actually qualify as advisory committees because such an analysis would require extrinsic evidence inappropriate for purposes of a motion to dismiss.  Federal defendants do not concede that either MTAC or its work groups qualify as advisory committees.

have considered affidavits that are not based on personal knowledge); cf. Car Carriers, Inc. v.

Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (finding it "axiomatic that the complaint

may not be amended by the briefs in opposition to a motion to dismiss").  Even if these

declarations were deemed incorporated in plaintiffs' Amended Complaint, they would still be

insufficient.  See, e.g., First Tabbita Decl. ¶¶ 6-10 (failing to explain whether the work groups

mentioned gave their recommendations directly to USPS or to MTAC, and failing to indicate

whether plaintiffs' claims are now limited to the listed work groups).  Plaintiffs have therefore

not cured the defects of their Amended Complaint in regard to alleging that particular MTAC

work groups qualify as advisory committees.

## CONCLUSION

For the foregoing reasons as well as those set forth in federal defendants' opening brief,

this action should be dismissed in its entirety.


Dated: November 13, 2007                 Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General
                                         JEFFREY A. TAYLOR
                                         United States Attorney

                                         /s/ Kathryn L. Wyer
                                         ELIZABETH J. SHAPIRO (D.C. Bar 418925)
                                         KATHRYN L. WYER
                                         U.S. Department of Justice, Civil Division
                                         20 Massachusetts Ave., NW
                                         Washington, D.C.  20530
                                         Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                         kathryn.wyer@usdoj.gov
                                         *Attorneys for Federal Defendants*
                                         *United States Postal Service and John E. Potter*