**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN POSTAL WORKERS UNION,      :
AFL-CIO, *et al.*,                  :
                                    :
        Plaintiffs,                 :
                                    :
    v.                              : Civil Action No. 07-0990 (JR)
                                    :
UNITED STATES POSTAL SERVICE, *et* :
*al.*,                              :
                                    :
        Defendants.                 :

<u>**MEMORANDUM**</u>

The United States Postal Service ("USPS") set up the
Mailer's Technical Advisory Committee ("MTAC") as "a joint effort
between mailers and the U.S. Postal Service to share technical
information, advice and recommendations on matters concerning
mail-related products and services in order to enhance customer
value and expand the use of these products and services for
mutual benefit." Amended Complaint [16] at ¶ 4. The American
Postal Workers Union ("APWU") and the Consumer Alliance for
Postal Services ("CAPS") complain that they have been excluded
from the meetings of MTAC, its working groups, and even its
website. They submit that their exclusion is a violation of the
Federal Advisory Committee Act ("FACA"). 5 U.S.C. app. 2. The
defendants move to dismiss, arguing that FACA does not apply to
USPS because of the exemption found in the Postal Reorganization
Act. 39 U.S.C. § 410(a). If USPS is exempt under § 410, its

alternative argument that plaintiffs lack a private cause of
action under FACA need not be addressed.

Numerous factors support the conclusion that USPS is
indeed exempt from FACA under § 410.  The policy choices embodied
in the Postal Reorganization Act would be subverted by subjecting
USPS to the requirements of laws such as FACA, and it seems clear
from the language and history of § 410 that it was the intent of
Congress to excuse USPS from compliance with them.  This reading
is supported both by the contemporaneous arguments of legislators
and by the numerous opportunities Congress has had – and
declined – to make FACA expressly applicable to USPS.  The case
will therefore be dismissed.

The Postal Reorganization Act grants USPS a broad
exemption from many of the laws that constrain the day-to-day
administration of other federal agencies:

> Except as provided by subsection
> (b) of this section, and except as
> otherwise provided in this title or
> insofar as such laws remain in
> force as rules or regulations of
> the Postal Service, no Federal law
> dealing with public or Federal
> contracts, property, works,
> officers, employees, budgets, or
> funds, including the provisions of
> chapters 5 and 7 of title 5, shall
> apply to the exercise of the powers
> of the Postal Service.

39 U.S.C. § 410(a).  Subsection (b) excludes a fairly short list
of laws from this "broad exemption," Nat'l Easter Seal Soc'y v.

USPS, 656 F.2d 754, 767 (D.C. Cir. 1981), including, for example, the Civil Rights Act, the Privacy Act, the Government in the Sunshine Act, and certain elements of the Freedom of Information Act.  See 39 U.S.C. § 410(b).  The net result is a powerful provision that exempts USPS from, inter alia, the requirements of the Administrative Procedure Act, including notice and comment rulemaking.  See Nat'l Easter Seals, 656 F.2d at 766-768.

As they must, the plaintiffs take the position that FACA is outside the § 410(a) exemption because it is not a "law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds."  They acknowledge that the text of FACA has numerous provisions that have something to do with officers or budgets – see, e.g., 5 U.S.C. app. 2, § 8(b) ("[T]he head of each agency which has an advisory committee shall designate an Advisory Committee Management Officer who shall . . . "); id. at § 9(c)(g) (prohibiting committees from meeting until a charter is filed outlining "the estimated annual operating costs in dollars and man-years for such committee"); id. at § 2(b)(2) ("new advisory committees should be established only when they are determined to be essential and their number should be kept to the minimum necessary").  Yet plaintiffs' view is that the impacts of these FACA provisions on officers and budgeting are incidental, and that the mandate of FACA to appoint

officers to oversee committee management and scrutinize budgeting is not the raison d'etre of the Act.

That argument is plausible, but it fails in the face of precedent that does not read the § 410 exemption as narrowly as plaintiffs do.  The statute exempts USPS from laws "dealing with" officers, employees, budgets or funds; the exemption is not limited to laws whose "sole" or "prevailing" purposes relate to those matters.  As noted, FACA requires advisory committees to submit budgets and requires officers of the covered agencies to oversee the committees.  These FACA provisions are "dealing with" officers and budgets no less directly than the APA's informal rulemaking provisions do so – APA provisions that have long been considered within the § 410 exemption.  See Nat'l Easter Seal 656 F.2d at 767 ("Congress viewed the APA as a statute pertaining to one or more of the exempt areas. . . .").  Thus, even if FACA does not deal directly with officers or budgets, it does not follow that FACA is outside the set of laws from which USPS is exempt under the Postal Reorganization Act.

The canon of expressio unius also suggests that the § 410 exemption is properly read to encompass FACA.  In § 410(b), Congress specifically excepted a list of provisions from the exemption in § 410(a) – that is, held USPS to those provisions notwithstanding the fact that they might "deal with" officers, budgets, and the like.  Notably, that list includes elements of

the Freedom of Information Act and the Government in the Sunshine
Act that bear a close family resemblance to FACA.  See 39 U.S.C.
§ 410(b)(1).  Under the canon, Congress's recognition that those
FACA-like provisions required express exception from the § 410(a)
exemption makes the absence of FACA from that list significant.

Indeed, § 410(b) expressly excludes from the § 410(a)
exemption many laws that seem to deal with officers and budgets
far less directly than FACA.  For instance, Congress specified
that the § 410(a) exemption would not apply to "the Randolph-
Sheppard Act, relating to vending machines operated by the
blind."  39 U.S.C. § 410(b)(3) (emphasis added).  If Congress
believed that a law that it described in the text of § 410 as
"relating to vending machines operated by the blind" could
possibly be considered a law "dealing with public or Federal
contracts, property, works, officers, employees budgets, or
funds," then it must have seen § 410(a) as a very broad
exemption, and it would have similarly listed FACA in § 410(b)
had it intended that FACA apply to the Postal Service.

Congress's various actions and inactions since the
passage of § 410 further support the conclusion I have reached.
Soon after passage of the Postal Reorganization Act, USPS took
the position that the § 410 exemption was sufficiently broad that
Congress should specify the administrative laws it intended to
apply to the Post Office.  Indeed, USPS urged Congress that, even

if Congress only amended a portion of title 5 that had already been made expressly applicable to the Postal Service as a listed exception under § 410(b), Congress should specifically say whether it intended the new amended provision to apply to USPS. See Letter from David A. Nelson to Hon. Thaddeus J. Dulski, Chairman, House Comm. on Post Office and Civil Service (Sept. 28, 1971), reprinted at 118 Cong. Rec. 1535. That same year – the year in which FACA was enacted – the original Senate sponsor of § 410 took a similarly strong view. See 118 Cong. Rec. 22,016 (1972) (Sen. McGee) ("Section 410 of title 39 related to the applicability of Federal law to the Postal Service. Among other things that section says that no law is applicable to the Postal Service unless it is set out in title 39 or unless the law is made specifically applicable to the Postal Service.") (emphasis added).

Thus, in the absence of any specific mention of FACA in § 410(b), USPS has considered itself exempt from FACA since the date of its enactment 35 years ago.[1] Congress has never

---

[1] The Postal Service's interpretations of its authorizing statute – at least those interpretations that have the force of law – are entitled to Chevron deference. See Aid Ass'n for Lutherans v. USPS, 321 F.2d 1166, 1174 (D.C. Cir. 2003). It is a much thornier question whether this particular interpretation, which was not adopted under any rulemaking authority and which concerns interpretation of both the Postal Service's statute and the nature of other statutes, should receive the same deference. Because the Chevron question was not briefed, and because I find that USPS has properly read § 410 in concluding that it is exempt from FACA, I will not reach the Chevron issue here. And

contested this interpretation by adding FACA to § 410(b), despite the fact that FACA compliance is achieved largely by direct congressional oversight.  <u>See</u> 5 U.S.C. app. 2, § 5.  Meanwhile, Congress has amended § 410(b) multiple times over the same period to explicitly subject USPS to other acts having FACA-like goals and provisions, <u>see generally</u> 39 U.S.C.A. § 410(b) (notes) (giving dates of amendments), including most notably the Government in the Sunshine Act, Pub. L. No. 94-409, 90 Stat. 1247 (1976) (<u>codified at</u> 5 U.S.C. § 552b).  The inescapable conclusion is that Congress was – and has been – aware that laws like FACA would not apply to the Postal Service absent some express statement to the contrary, and that Congress has done nothing to alter the situation.

        The legislative history of § 410 – oft-cited in the federal courts, <u>see, e.g.</u>, <u>Franchise Tax Bd. v. USPS</u>, 467 U.S. 512, 520 (1984); <u>Nat'l Easter Seals</u>, 656 F.2d at 767 – makes it even more clear that FACA is of the class of procedural, administrative legislation that § 410 was specifically intended to clear from the path of the modernizing Postal Service.  The Senate sponsor of the bill read into the record a statement reflecting the views of the committee:

_____

regardless of whether <u>Chevron</u> applies, the Postal Service's longstanding interpretation is relevant in assessing the meaning of Congress's failure to expressly list FACA in § 410(b).

> Except as specified in the bill,
> all laws relating to public works,
> contracts, employment,
> appropriations, budgeting, and any
> other laws governing agency
> operations are made inapplicable to
> the Post Office.

116 Cong. Rec. 21,709 (1972) (Sen. McGee) (emphasis added).  The

committee's view was that:

> Laws which are appropriate to
> governmental management
> generally . . . are not the best
> method of control in the case of
> the Post Office.  They have proven
> to be a hindrance to postal
> modernization.
>
> . . . .  Delivering the mail is
> simply not in the same category of
> policy making and program-
> development as foreign policy,
> national defense, housing, highway
> construction, or health and
> education assistance to State and
> local governments.  It is an
> essential, business-oriented
> service.  The committee has no
> intention of establishing any
> postal system which does not have a
> direct and continuing
> responsibility to the people and to
> Congress, but we do believe that
> its role can be fulfilled with a
> greater degree of efficiency if it
> is removed from the ordinary
> channels, administrative controls,
> and legislative restrictions of
> other agencies in the executive
> branch.

Id.  In short, the intent of Congress in exempting the Postal

Service from laws "dealing with" works, officers, and budgets was

not to suspend the operation of a narrow subset of provisions,

- 8 -

but to remove the Service broadly from the system of proceduralized review that Congress uses for overseeing the operations of the administrative state.  FACA, like the APA, is a part of that system.

Congress's tacit acknowledgment over the past 35 years that § 410 bars application of FACA to the Postal Service makes perfect policy sense.  The intent of the Postal Reorganization Act was to allow USPS to "be run more like a business," Franchise Tax Bd., 467 U.S. at 520, favoring the expedient of cost-constraints over the impediment of proceduralized oversight as the best way of keeping USPS in line with its mission.  This was a safe bet for "consumers" of the public mail – USPS lacks the ability to pass its cost overruns on to the consumer because control over rates is partially vested in the Postal Regulatory Commission (previously, the Postal Rate Commission), which, unlike USPS, is an agency that must comply fully with administrative procedure requirements including public comment.  See, e.g., 39 U.S.C. §§ 3652-3653; USPS v. Flamingo Indus., 540 U.S. 736, 747 (2004) (because USPS cannot set prices, it lacks the "means of engaging in anti-competitive behavior").  With these facts in mind, Congress elected to trust market forces and avoid the costs of direct, proceduralized regulation of USPS by enacting § 410(a), and the courts should respect its judgment as

to the best means of ensuring that the Postal Service serves its

purpose and the public good.

  An appropriate order accompanies this memorandum.




         JAMES ROBERTSON
       United States District Judge